IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 26, 2019

**STATE OF TENNESSEE v. TALMADGE D. MURPHY**

**Appeal from the Criminal Court for Sullivan County**
**Nos. S66531, S67284, S67351     James F. Goodwin, Jr., Judge**

_____

**No. E2018-00363-CCA-R3-CD**

_____

The Appellant, Talmadge D. Murphy, appeals the trial court's revocation of his probationary sentence, specifically arguing that the trial court abused its discretion by considering evidence not elicited by either party during the hearing. Upon review, we reverse the judgment of the trial court and remand for a new revocation hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**Case Remanded**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

William A. Kennedy, Blountville, Tennessee, for the Appellant, Talmadge D. Murphy.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Lewis Combs, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The Appellant was indicted on one count of aggravated domestic assault, one count of failure to appear, and two counts of aggravated assault. He pled guilty to attempted aggravated assault, failure to appear, and two counts of assault. The trial court imposed sentences of three years, one year, and eleven months and twenty-nine days respectively. The three-year sentence was to be served consecutively to the one-year sentence for a total effective sentence of four years, which was to be served on probation.

On November 8, 2017, a probation violation warrant was issued alleging that (1) the Appellant had been charged with criminal trespass, (2) he had failed to report his arrest to his probation officer, (3) he had failed to provide proof he was employed or was seeking employment, and (4) he had failed to pay probation fees and court costs.

At the beginning of the probation revocation hearing, defense counsel acknowledged that the Appellant had pled guilty to criminal trespass and that he was guilty of the violations alleged in the warrant. Defense counsel asserted that the Appellant had no prior violations.

The Appellant testified that he pled guilty to criminal trespass in exchange for a suspended sentence of thirty days. The Appellant said that if he were released on probation, he would live in Kingsport with his wife. The Appellant acknowledged that he was not employed and that he had no employment prospects, but he planned to get a job. The Appellant stated that he was "doing great" on probation prior to his violations. He said that he had not started his community service but that he had been making payments on his court costs.

On cross-examination, the Appellant said that he did not know if his wife was at home or in the hospital. He explained that she was pregnant and had been diagnosed with Stage 2 cancer. The Appellant denied threatening his wife after he was arrested for criminal trespass and denied they were having domestic problems at the time. The Appellant explained that his wife made the allegations against him in November because she had not taken her medicine for bipolar disorder, and she became angry after another woman had said she and the Appellant were having an affair.

The State noted that according to the presentence report, the Appellant was a member of a gang. The State asked the Appellant if he was "a gang member at this point in time." The Appellant said, "No, I am not." When asked if he had ever been a gang member, the Appellant responded, "Yes, I have. It was not a gang. It was an organization. . . . Growth and Development." He explained that Growth and Development was "[t]he same as any organization that's dealing with any type of sisterhood or brotherhood" and that they collected school supplies for children and participated in "all type of activities, anything that's positive and productive." He stated that to become a member, "[t]here was no type of a ritual or anything because it's not a gang. It's an observation period where you be observed 16 to 30 days and then you go through a little phase; nothing physical whatsoever." He said that chapters of Growth and Development were located "all over the world." He thought the organization had a chapter in the Tri-cities, but he had never attended a meeting.

Thereafter, the trial court asked the Appellant "point blank" whether he was "a part of the Growth and Development Folk Nation set of the Gangster Disciples?" The Appellant said, "Was I a part? Yes I was." The Appellant stated, however, that he was no longer a part of Growth and Development, explaining, "I placed myself inactive because I'm married now and I have a son on the way, etcetera, etcetera." The court asked how long the Appellant had been out of the organization. The Appellant replied, "It's been a while now. I can't necessarily say. I'd say about—it's been a minute."

On recross-examination, the State asked the Appellant why he left Growth and Development if the organization benefitted children. The Appellant said that he had gotten married six months before the hearing and that he left to spend more time with his family.

The trial court noted that the Appellant's wife, with whom he planned to live if he were granted another probationary sentence, was the victim of the aggravated assault. The court noted that the Appellant admitted that he violated probation by being convicted of criminal trespass, which was "a relatively minor charge," to which he pled guilty, and failing to find employment. The trial court said:

> I think what disturbs the court more than anything is that during this cross examination he adamantly denied being a member of a gang. He described what he was involved with as the Growth and Development which was a youth organization that provided books to kids and other noble things and it wasn't until the court challenged him after all the testimony was through by the attorneys the court challenged him about whether or not he was, that was a subset of the Gangster Disciples and he finally said yes. He admitted that he was still a member of that set of Gangster Disciple Folk Nation when he came to this area.

The trial court found that the Appellant was not truthful with the court during the probation revocation hearing and that he failed to report his new charge to his probation officer. Additionally, the Appellant was not working at a lawful occupation. The Appellant was placed on probation in August 2017, and the new offense occurred approximately two months later. The trial court revoked the Appellant's probation and ordered him to serve his sentence in confinement.

The record reflects that after the hearing, the trial court provided the State and defense counsel a copy of a letter the trial court had sent to the Tennessee Board of Judicial Conduct to "self-report . . . a violation of rule 2.9(C) of the Rules of Judicial

Conduct."[1] In the letter, the trial court explained that during cross-examination, the Appellant denied that he was a gang member. He said, however, that he was a member of Growth and Development, which he described as "an organization dedicated to improving the lives of children."

While the State cross-examined the Appellant, the trial court did an internet search and discovered "that Growth and Development was a subset of the Folk Nation of the Gangster Disciples." After the parties finished questioning the Appellant, the trial court asked the Appellant whether "Growth and Development was a subset of the Folk Nation of the Gangster Disciples and he answered that it was." The trial court asserted that because of the Appellant's new conviction and his lack of truthfulness with the court, the Appellant was ordered to serve his original sentence in confinement.

The record reflects that at the 2018 March Judicial Conference, the trial court learned that the internet search it performed during the revocation hearing was improper. The court immediately informed the parties of the impropriety and directed defense counsel to file a motion to reconsider. The trial court intended to grant that motion, recuse itself, and have another judge preside over the revocation hearing. The trial court stated, however, that the Appellant "had already been taken by the [Tennessee Department of Correction] out of our jail. Because of this fact, I have lost jurisdiction to hear a motion to reconsider. I, therefore, could not rectify the error."

On appeal, the Appellant contends that the trial court abused its discretion by revoking his probation and ordering him to serve his original sentence in confinement. The Appellant also contends that the "trial court abused its discretion by using the internet to obtain evidence not elicited at the probation revocation hearing."

## II. Analysis

Upon finding by a preponderance of the evidence that the Appellant has violated the terms of his probation, a trial court is authorized to order the Appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Furthermore, probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining

---

[1] Rule 2.9(C) of the Rules of Judicial Conduct provides that "[a] judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." Tenn. Sup. Ct. R. 10, Canon 2.9(C).

party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010).

In the instant case, the Appellant pled guilty to violating the terms of his probation by being convicted of criminal trespass and failing to report his arrest for criminal trespass to his probation officer. Therefore, if the trial court had considered these factors alone, it would not have abused its discretion by revoking the Appellant's probation and ordering him to serve his original sentence in confinement. See Felix Tyrone Smith v. State, No. M2004-02098-CCA-R3-CD, 2005 WL 2008197, at *4 (Tenn. Crim. App. at Nashville, Aug. 18, 2005).

However, the trial court went beyond the proof presented and relied heavily upon the information it gleaned from the internet to revoke the Appellant's probation, which was an abuse of discretion. We note that on appeal, the Appellant contends that the primary reason the trial court revoked the Appellant's probation was his failure to acknowledge that Growth and Development was a subset of a gang, which the trial court would not have known if it had not "gone outside the record." In response, the State concedes that the record contains evidence that the trial court performed an independent internet search to discover that the Growth and Development organization was a subset of the Gangster Disciples. The State contends, however, that the information was also in the Appellant's presentence report, which the trial court reviewed during the hearing.[2] The State maintains, therefore, that the record contains independent evidence to suggest that the Appellant was untruthful when he denied ever having a gang affiliation.

Rule 2.9(C) of the Rules of Judicial Conduct provides that "[a] judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." Tenn. Sup. Ct. R. 10, Canon 2.9(C). In other words, "a 'judge is not permitted to make an investigation of a case, even an inadvertent one, off the record, and then base a holding on the information obtained. . . .'" State v. Hart, 911 S.W.2d 371, 376 (Tenn. Crim. App. 1995) (quoting Vaughn v. Shelby Williams of Tennessee, Inc., 813 S.W.2d 132, 133 (Tenn. 1991)).

In the instant case, the trial court freely admitted performing an internet search during the hearing and, immediately upon learning that it had violated a Rule of Judicial Conduct, admirably self-reported the violation of the Rules of Judicial Conduct to the parties and to the Tennessee Board of Judicial Conduct in an effort to cure the error.[3] The court also stated that it had intended to direct defense counsel to file a motion to reconsider so that the court could grant the motion, recuse itself, and have another judge

---

[2] The presentence report is not included in the appellate record for our review.

[3] We commend the trial court for reporting the violation of the rules of judicial conduct without which it is likely the violation would never have been known.

preside over the revocation hearing. However, because the Tennessee Department of Correction had removed the Appellant from the jail, the trial court believed it had lost jurisdiction to hear a motion to reconsider and "could not rectify the error."

Tennessee Rule of Criminal Procedure 35 outlines the procedures for filing a motion for modification of a sentence. Specifically, the rule provides:

> (a) Timing of Motion. The trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked. No extension shall be allowed on the time limitation. No other actions toll the running of this time limitation.

Tenn. R. Crim. P. 35(a). This court previously has held that "a Rule 35 motion stands on its own power and is not contingent on the location of the defendant." State v. Edenfield, 299 S.W.3d 344, 346 (Tenn. Crim. App. 2009). Therefore, the trial court's finding that it did not have the jurisdiction to hear a motion to reconsider after the Appellant was transferred to the department of correction was erroneous and deprived the Appellant of the ability to seek relief from the trial court's error.

It is well-established that it is within a judge's discretion to decide whether he or she should be recused from a legal proceeding. State v. Cannon, 254 S.W.3d 287, 307 (Tenn. 2008) (citing State v. Reid, 213 S.W.3d 792, 815 (Tenn. 2006)). The judge's decision will not be reversed absent a clear abuse of discretion. Id. "However, if a judge has any doubt concerning his or her ability to preside over a case impartially or neutrally, recusal is warranted." Id.

As we stated earlier, the trial court admittedly violated Rule 2.9(C) of the Rules of Judicial Conduct by performing an independent internet search of the facts of the case. Generally, an improper ex parte communication, such as an independent investigation by the trial court, warrants recusal when the objecting party has shown prejudice. See Tune, 872 S.W.2d at 928; State v. Chastity Coleman, No. M2017-00264-CCA-R3-CD, 2018 WL 1684365, at *7 (Tenn. Crim. App. at Nashville, Apr. 6, 2018). Additionally, recusal may be warranted when "a person of ordinary prudence, knowing all the facts available to the trial judge in this case, would question whether []he can be impartial in the proceedings." Holsclaw v. Ivy Hall Nursing Home, Inc., 530 S.W.3d 65, 72 (Tenn. 2017). Although the Appellant was deprived of the ability to file a motion for recusal, the trial court nevertheless believed it should be recused from the case. We agree. See Lee A. Beaman v. Kelley Speer Beaman, No. M2018-01651-COA-T10B-CV, 2018 WL 5099778, at *15-16 (Tenn. Ct. App. at Nashville, Oct. 19, 2018) (stating that trial court's comments that the results of his independent investigation influenced his views of one of the parties and that the results would impact his custody decisions created an appearance

- 6 -

of bias or prejudice warranting the trial court's recusal).  Our supreme court has noted that "'[t]he preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial.'" State v. Reid, 213 S.W.3d 792, 815 (Tenn. 2006) (quoting Kinard v. Kinard, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)).  In order to preserve the public's confidence in judicial neutrality in the instant case, we must reverse the judgment of the trial court and remand for a new probation revocation hearing to be held in front of a different trial judge.

### III.  Conclusion

The judgment of the trial court is reversed, and the case is remanded for a new revocation hearing before a different judge.

_____

NORMA MCGEE OGLE, JUDGE