# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs October 23, 2019

## ANNE FROST MONTGOMERY RENNER v. ROBERT BRUCE RENNER, SR.

**Appeal from the Chancery Court for Bradley County**
**No. 2015-CV-6      Jerri Bryant, Chancellor**

_____

**No. E2019-01879-COA-T10B-CV**

_____

Movant, defendant in a divorce case, seeks accelerated review of the denial of his motion for recusal. He claims a lack of impartiality on the part of the chancellor presiding over the divorce case due to her knowledge of unrelated litigation in which the movant was a party. He contends that the chancellor revealed her lack of impartiality in making adverse credibility determinations against movant, determining movant violated a statutory injunction, and ignoring prior orders and agreements of the parties in making factual findings. Movant also complains of the manner in which the chancellor conducted an emergency hearing, alleging that the chancellor "lacked patience and cooperation with the litigants on th[at] day." After a de novo review, we affirm the denial of the motion for recusal.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Randy Sellers, Cleveland, Tennessee, for the appellant, Robert Bruce Renner, Sr.

## OPINION

### I.

#### A.

In the first days of 2015, in the Chancery Court for Bradley County, Anne Frost Montgomery Renner filed for divorce from Robert Bruce Renner, Sr. Mr. Renner was no stranger to the Bradley County Chancery Court. The preceding year he had been sued twice in the same court, apparently related to homes he was involved in constructing and selling.

Not long after the divorce filing, Mr. Renner settled the earlier filed cases. Under the settlements, Mr. Renner agreed to repurchase the homes and make monetary payments to the plaintiffs. Because the earlier cases both involved minors, the parties sought and obtained the chancery court's approval of the settlements. According to Mr. Renner, he had to borrow funds in order to fulfill his obligations under the settlements, which required him to mortgage the homes he repurchased.

Meanwhile, in the divorce case, the Renners stipulated to a divorce and agreed to a division of personal property and that certain real property would be sold. *See* Tenn. Code Ann. § 36-4-129 (2017). But several issues remained unresolved. Among those were the classification and division of marital property. The parties "had a gross estate of over $6,800,000" and the "many assets which [Mr. Renner] has held, individually and jointly with [Ms. Renner] and others, creat[ed] a convoluted list of properties and titles and percentages of ownership."

The day for resolving those issues came on August 1, 2018. Mr. Renner appeared for the hearing with his counsel, but Ms. Renner, despite "advis[ing] the Court . . . that she would be present and ready to move forward . . . , with or without counsel," did not. The hearing proceeded with only Mr. Renner offering proof.

Following the hearing, the court's order, entered on February 21, 2019,[1] reflected concern over perceived conflicts between Mr. Renner's testimony and documents that were either admitted into evidence at the hearing or that had been previously submitted in the case. Mr. Renner testified to the value of his interest in an entity known as Hole Foods Holding Group, and the court found the testimony "contrary to the documentation provided." The court concluded that the "inconsistency impacts his credibility." He valued his one-half ownership interest in another business, RMG/Bradley Motors, as

---

[1] After taking the matter under advisement, the court noted "the absence of late filed exhibits and gave the parties the opportunity to file the same on or before September 24, 2018."

being "zero."  But the court did not find the valuation credible in light of Mr. Renner running "over a million dollars of inventory through th[e] entity" and his payment of "$70,000 in mortgages on the property during the marriage."  Later, Mr. Renner testified that $7,500 from the sale of realty went into a trust account, although the documentation showed $10,000 went into the account.  The court found this to be "another inconsistent statement that impact[ed] [Mr. Renner's] credibility."

The court also found Mr. Renner gave inconsistent testimony during the course of the hearing.  At one point, Mr. Renner apparently testified that he was "not a partner" in two business entities but later testified that his wife could have the entities if she would assume the debt associated with them.  The court was puzzled over how Mr. Renner could owe debt on the business when he did not own them.  The order states that "[t]his type of testimony, the lack of proof, and the convoluted and ever-changing list of assets shows a lack of transparency and credibility."

In addition to the adverse credibility findings, the court determined that Mr. Renner had violated the statutory injunction that went into effect when he was served with the complaint for divorce.  *See id.* § 36-4-106(d) (2017).  The court noted these violations in reference to two limited liability companies, Ok Bagel, LLC and RAK Holdings, LLC, in which Mr. Renner claimed ownership interests.  The court also found that Mr. Renner had violated the statutory injunction in connection with the settlement of the two earlier chancery court cases.  Mr. Renner had funded his settlement payments through mortgages on the homes he repurchased as part of the settlements and on a third property.

Although the August 1 hearing was intended to resolve all outstanding issues in the divorce, the court concluded that another hearing would be necessary to determine such issues as child support and the classification and division of some property.  The hearing to resolve the remaining issues had not yet taken place when, in July 2019, Ms. Renner filed a pro se petition for emergency relief.  She alleged that Mr. Renner was dilatory in making his support payments, causing her financial hardship.  She also complained about Mr. Renner's interaction with the couple's minor son.  And she requested that the court order counseling and revisit the child's residential placement.

On August 20, 2019,[2] Ms. Renner's emergency petition came on for a hearing.  The court focused the hearing on Ms. Renner's claims of late support payments.  After securing agreement from Mr. Renner's counsel that Mr. Renner would make future support payments by direct deposit, the court heard testimony from Ms. Renner regarding exactly which months Mr. Renner had paid late.  Because she was representing herself at the hearing, the court asked several questions and kept a running tally of amounts that

---

[2] Ms. Renner originally noticed her emergency petition for a hearing to be held on July 15.  At Mr. Renner's request, the court continued the hearing to August 20.

3

Ms. Renner claimed were due or were incurred as result of not receiving the payments on time. When the time came for his counsel to cross-examine Ms. Renner, Mr. Renner's counsel instead offered that Mr. Renner would pay the amounts to which Ms. Renner testified. The court accepted that offer and further ordered Mr. Renner to pay "four late . . . fees on top of that at $65 each."

B.

On October 1, 2019, two days before a scheduled hearing on a "global settlement" of the case, Mr. Renner moved for the recusal or disqualification of the chancellor. As grounds, Mr. Renner cited several findings and decisions from the court's order following the August 1, 2018 hearing. He highlighted the chancellor's role in approving the settlements in the two other suits filed against him in chancery court. As noted above, the chancellor found that placing deeds of trust on the properties that were repurchased as part of the settlements was a violation of the statutory injunction but also awarded both properties to Ms. Renner. Mr. Renner "believe[d] that the Court's findings and knowledge of the facts from the prior cases affect[ed] the Court's view of [his] credibility in the pending case."

And Mr. Renner objected to the court's finding that he was at fault for the demise of the marriage and that his infidelity was a precipitating cause of the divorce. He submitted this caused him to question the chancellor's impartiality because the parties had stipulated to a divorce on the grounds of irreconcilable differences.

Mr. Renner also complained about the chancellor's insistence on additional proof on some matters. He alleged that, despite "a recitation of agreed property interests . . . . , the Court has for some reason required additional proof to prove these property percentage interests at . . . [the hearing on August 1, 2018] wherein [Ms. Renner] was not even present." And he asserted that the chancellor ignored a previous agreed order in which the parties had agreed that certain properties were separate. According to Mr. Renner, the "heightened request for additional proof lends itself to at least the appearance of a lack of impartiality."

Finally, Mr. Renner took issue with the manner in which the chancellor conducted the August 20, 2019 hearing on Ms. Renner's petition for emergency relief. Based on the chancellor's statements at the hearing, Mr. Renner "believe[d] that the Court, either because of the Court's workload and/or the length and intricacy of this divorce proceeding is not treating [him] with patience nor allowing him to present a valid defense to certain issues."

The court denied the request for recusal or disqualification. The court had conducted hearings in the divorce case since January 2015, but the court could not recall "**any** other hearings against Mr. Renner." After reviewing the court files from the two

4

cases Mr. Renner settled, the court observed that the settlements were approved upon proposed agreed orders and without a court hearing. The court further observed that the agreed orders approving the settlements had not been entered as exhibits during the August 1, 2018 hearing and that Mr. Renner was the only party that appeared, implying that any information concerning the settlements and the mortgages on the properties came through Mr. Renner's testimony. Additionally, Mr. Renner had known about the court's involvement in the settlements for some time and had not sought recusal on that basis.

As for the finding of fault in the demise of the marriage, the court considered fault in the context of its award of alimony to Ms. Renner. Despite the fact that the divorce was granted upon stipulation, the court concluded that the relative fault of the parties was still an appropriate consideration in determining whether support was appropriate and the nature, amount, term, and manner of payment. *See id.* § 36-5-121(i)(11) (2017).

The court explained that it was required to make factual findings regarding property, including its classification and division. It found that the property was not "appropriately documented" by Mr. Renner and that Mr. Renner's testimony was inconsistent with the proof. But the court pointed out that it had provided Mr. Renner with an opportunity to submit additional documentation to satisfy the court's concerns. If there were any inappropriate findings of fact, the court expected Mr. Renner to bring that to the court's attention by a motion to alter or amend.

With respect to the hearing on Ms. Renner's petition for emergency relief, the court viewed the hearing transcript differently than Mr. Renner. The court described the hearing as mostly concerned with "trying to focus Ms. Renner on exactly what she was requesting in her petition." And the court observed that the hearing concluded with Mr. Renner agreeing to pay Ms. Renner $1,901.

This accelerated interlocutory appeal followed the court's ruling. Although it denied the request for recusal or disqualification, the court stayed the divorce proceedings pending the outcome of the appeal. *See* TENN. SUP. CT. R. 10B, § 2.04.

## II.

Rule 10B of the Rules of the Supreme Court of Tennessee governs the procedure for "determin[ing] whether a judge should preside over a case." TENN. SUP. CT. R. 10B. In an accelerated interlocutory appeal, our review is limited to the trial court's ruling on the motion for disqualification or recusal. *See id.* § 2.01; *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012) ("[T]he only order we may review is the trial court's order that denies a motion to recuse."). We apply a de novo standard of review. TENN. SUP. CT. R. 10B § 2.01.

5

In an accelerated appeal, we may request an answer from the other party and briefing. *Id.* § 2.05. We may also set oral argument. *See id.* § 2.06. After a review of Mr. Renner's petition for recusal appeal and supporting documents, we have determined that an answer, additional briefing, and oral argument are unnecessary. Thus, we act summarily. *See id.* § 2.05.

In his appeal of the denial of the request for recusal or disqualification, Mr. Renner again focuses on the hearings of August 2018 and 2019. We address each hearing separately.

A.

Litigants "have a fundamental right to a 'fair trial before an impartial tribunal.'" *Holsclaw v. Ivy Hall Nursing Home, Inc.*, 530 S.W.3d 65, 69 (Tenn. 2017) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)); *see also* TENN. CONST. art. VI, § 11. But the right to question the trial court's impartiality may be waived. *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). The party seeking recusal must file the recusal motion "promptly after the facts forming the basis for the motion become known." *Id.*; *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009). The "rule [is] that a party must complain and seek relief immediately after the occurrence of a prejudicial event and may not silently preserve the event as an 'ace in the hole' to be used in event of an adverse decision." *Gotwald v. Gotwald*, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988) (quoting *Spain v. Connolly*, 606 S.W.2d 540, 543 (Tenn. Ct. App. 1980)).

We conclude that Mr. Renner waived his right to challenge the chancellor's impartiality based on the events stemming from the August 1, 2018 hearing or the court's ruling following the hearing. Mr. Renner's motion for recusal or disqualification came fourteen months after the hearing and over 7 months after the court's order. Although his concerns over the chancellor's impartiality may not have fully materialized until the court entered its order, 7 months is too long to wait to raise those concerns. Instead of complaining and seeking relief immediately after entry of the order, Mr. Renner waited until the eve of the hearing on the "global settlement" of the divorce.

Even had Mr. Renner not waived his right to challenge the chancellor's impartiality due to the August 1, 2018 hearing, we conclude that the record presented does not support reversal of the chancellor's ruling. Mr. Renner emphasizes that the chancellor approved settlements in unrelated cases involving Mr. Renner and that those settlements led to a finding that he had violated the statory injunction. But "the mere fact that a judge has ruled adversely to a party . . . in a prior judicial proceeding is not grounds for recusal." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001); *cf.* TENN. SUP. CT. R. 10, Rule 2.11(A)(6)(d). Additionally, we note that the pleadings and orders related to the settlements do not make reference to any borrowing by Mr. Renner to fund settlement payments. The omission of this information leads to the conclusion that the

6

court learned of the deeds of trust on the properties that were part of the settlement other than through the settlement approvals, either through Mr. Renner's own testimony or through documentation he exhibited at the hearing. We cannot know for sure on this record because we do not have a transcript of the August 1 hearing.

Mr. Renner complains of the adverse credibility determinations made at the hearing at which he was the only witness. But "trial judges necessarily assess the credibility of those who testify before them, whether in person or by some other means." *Davis*, 38 S.W.3d at 565. "[T]he mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse." *Id.*

Whether the chancery court erred in assessing fault when the parties stipulated to a divorce may be a proper issue for an appeal of the case. But under these circumstances, we do find it an appropriate basis for seeking recusal. Mr. Renner claims that the court assessed fault without hearing any testimony concerning fault, but without the benefit of a transcript of the hearing, the record does not permit us to make such a determination.

Lastly, regarding the claim that the chancery court ignored its previous orders regarding the classification of property, we are again hindered by the lack of the transcript from the August 1 hearing. We do not know if Mr. Renner offered the prior orders as exhibits, asked the court to take judicial notice of them, or otherwise brought them to the court's attention during or after the hearing. We know, because it is referenced in the court's order denying the motion for recusal or disqualification, that Mr. Renner did not "file a motion to alter or amend and point to those [findings] with which he disagrees and cite to . . . his contrary proof." If Mr. Renner did none of those things, we would not attribute bias to a judge in a case where it had "held hearings . . . since January 9, 2015" and the case docket "consist[ed] of fifteen (15) pages of filings filed by the parties" for simply overlooking one or more of its prior orders.

B.

For the August 20, 2019 hearing, Mr. Renner requests that we "pay particular attention to the rapid fire questioning of Mr. Renner's counsel . . . during what was still opening statement, attempting to elicit agreements before the proof was heard, yet . . . indicating that Mr. Renner's counsel was taking a long time to explain his position." According to Mr. Renner, "the Court lacked patience and cooperation with the litigants on this day." Coupled with the other conduct alleged in connection with the August 1, 2018 hearing, it "could lead a reasonable person to conclude that the Trial Court Chancellor was not impartial or was not able to devote the time and patience necessary to such a hard job as the Judge has." We disagree.

Under the Code of Judicial Conduct, a judge must "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned."

7

TENN. SUP. CT. R. 10, Rule 2.11(A). "[T]he test for recusal is an objective one . . . ." *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008). Recusal is required "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis*, 38 S.W.3d at 564-65 (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). The decision to recuse is vested in the judge's discretion.[3] *State v. Hester*, 324 S.W.3d 1, 72 (Tenn. 2010).

In the transcript, whether considered in isolation or in combination with the other facts relied on by Mr. Renner, we find no basis for questioning the judge's impartiality. As the court explained, "Ms. Renner's emergency petition alleged she was in immediate danger of losing 'basic room and board' because of Mr. Renner's delay in paying her support." Because of this and even though Ms. Renner was seeking other relief, the court focused the hearing on the issue of support and "to ferret out what [Ms. Renner] was requesting from Mr. Renner." Both the petition for recusal appeal and Mr. Renner's affidavit provide ample explanation for the manner in which the court conducted the emergency hearing. According to the petition, "the Court indicated to Ms. Renner that she was set for a short hearing today because the Court had an all day trial scheduled." And the chancellor's "docket is the largest of all the civil Judges in this district." Mr. Renner's affidavit explained there was "a full courtroom and not a lot of time to deal with any one particular case." In sum, the manner in which the court conducted the hearing appears appropriate in light of the circumstances.

## III.

Based on the record presented, we conclude that the chancery court did not err in denying Mr. Renner's motion for recusal or disqualification. Thus, we affirm and remand this case for further proceedings.

_____
W. NEAL McBRAYER, JUDGE

---

[3] Mr. Renner does not argue that recusal was mandatory under either Article 6, Section 11 of the Tennessee Constitution or Tennessee Code Annotated § 17-2-101 (2009). *See Hester*, 324 S.W.3d at 72.

8