# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE

## JEANIE HOLSCLAW v. IVY HALL NURSING HOME, INC.

**Accelerated Appeal by Permission from the Court of Appeals
Circuit Court for Carter County
No. C12784  Jean A. Stanley, Judge**

_____

**No. E2016-02178-SC-T10B-CV – Filed September 19, 2017**

_____

This case is on appeal from a trial court judge's decision not to recuse herself based on a telephone call to a university department director concerning a potential expert witness' qualifications.  Upon the trial court's denial of the defendant's motion for recusal of the trial court judge, the defendant filed an accelerated interlocutory appeal in the Court of Appeals pursuant to Tennessee Supreme Court Rule 10B, section 2.  The Court of Appeals reversed the trial court's decision, holding that recusal of the trial judge was necessary.  We granted the plaintiff's accelerated application for permission to appeal to this Court.  Having thoroughly reviewed the filings of both parties and the applicable law, we conclude that the trial court's denial of the motion to recuse was appropriate in this case.  Therefore, we reverse the decision of the Court of Appeals.

**Tenn. Sup. Ct. R. 10B Accelerated Appeal by Permission; Judgment of the
Court of Appeals Reversed; Judgment of the Trial Court Reinstated**

PER CURIAM.  ROGER A. PAGE, J., filed a dissenting opinion.

Robert Bates and Tony Seaton, Johnson City, Tennessee, for the appellant, Jeanie Holsclaw.

Steven H. Trent and Mark A. Fulks, Johnson City, Tennessee, for the appellee, Ivy Hall Nursing Home, Inc.

## OPINION

### Factual and Procedural Background

This matter originated as a retaliatory discharge action filed by Jeanie Holsclaw ("Plaintiff") against Ivy Hall Nursing Home, Inc. ("Defendant") in November 2012.  The

parties engaged in extensive discovery over the course of several years. During that time, the first two trial judges assigned to the matter recused or removed themselves, and eventually the Honorable Jean Stanley was assigned to preside over the case. The matter was set for trial five different times but, to date, no trial has occurred.

On September 12, 2016, the Defendant filed a motion, pursuant to Tennessee Rule of Civil Procedure 35.01,[1] requesting an examination of the Plaintiff by Edward M. Smith, a certified rehabilitation counselor ("CRC"), to support its affirmative defense of failure to mitigate damages. The Defendant's motion stated that Mr. Smith's examination would focus on "Ms. Holsclaw's individual characteristics and the job market" and "the nature and extent of Ms. Holsclaw's vocational disability." The Defendant argued that, upon examination, Mr. Smith would be able to testify regarding "Ms. Holsclaw's ability to work as a CNA,[2] the availability of CNA positions in the area, and the availability of alternative or substitute jobs for which Ms. Holsclaw is qualified based upon her transferable skills." (Footnote added).

The Plaintiff opposed the motion, arguing in her response that this request was the fourth examination to which she would be required to undergo in the course of litigation;[3] that the Defendant was attempting to circumvent the trial court's order limiting its requests for admissions; that the Defendant already had conceded that the Plaintiff had a vocational disability; and that, regardless, a vocational disability was not an element of damages in a wrongful termination case. Moreover, the Plaintiff argued that a CRC was not qualified to testify regarding the "availability of alternative job opportunities in a particular labor market" or "Ms. Holsclaw's efforts to secure alternative employment."

---

[1] Rule 35.01 states:

When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Tenn. R. Civ. P. 35.01.

[2] The Plaintiff's Response to the Defendant's motion for Evaluation indicates that "CNA" stands for "Certified Nurse Aid."

[3] We note that this total apparently includes the examinations in the separate workers' compensation action between the parties in addition to this case.

On September 19, 2016, the trial court held a hearing on the Rule 35 motion and stated the following:

THE COURT: Okay. Here's the deal. You all don't need to keep hiring 14 experts on this issue and 14 on that. It is a real issue; front pay and back pay are an issue. So that being at issue, I think they have the right to ask for an evaluation.

My view on this is that I would rather have one expert I could trust that's appointed by the court, who doesn't care who the plaintiff is or who the defendant is. Really, my leaning would be for the court to appoint somebody. Now, if you all don't want to do that, I'm probably going to let him go ahead and have this evaluation done.

. . . .

THE COURT: Okay. And I will tell you all this: Most of the experts I've had on this kind of topic are, like, Dr. Hankins, vocational disability experts. So, I really was not all that familiar with the rehab counselors. To me, the whole concept of a rehab counselor is somebody who is going to counsel with you, form a relationship with you, and try to help you. So my first question was: Are these dudes even qualified to testify as experts?

So, frankly, I called the director of the department at the University of Tennessee this morning. I talked to Dr. Mulkey. I don't think there is any problem with me doing that, but I do think I have an obligation to disclose to you that I did. He just kind of filled me in on what the program, the certification is, what these guys do and don't do, you know, enough for me to at least conclude that this is the type of certification for a person that I might let testify as an expert.

So I understand that what this person might or might not be able to testify to is also going to be limited by what their background, education, and so forth is. And I'm not even making any kind of ruling on that right now, but I had even asked him if he could give me a couple of names of people who might be willing to work for the court, not necessarily for a party in litigation and he said that, yes, he could probably do that.

So, just for general information, if you're ever in a position where you would prefer to have a court-appointed expert that doesn't testify for a living, I think I can get us one. Just general info.

The parties raised no objection following the trial court's disclosure. At the conclusion of the hearing, the trial court granted the Defendant's motion for a Rule 35 examination.

On October 21, 2016, the Defendant obtained a copy of the transcript from the hearing on the Rule 35 motion and filed a motion to recuse the trial judge on October 25, 2016. The Defendant argued that recusal was necessary because the trial court "did not constrain itself to consideration of the facts presented by the parties"; "conducted an independent investigation"; and "acquired knowledge from an extra-judicial source." Accordingly, the Defendant argued that the trial judge had "personal knowledge of disputed evidentiary facts concerning the proceeding." The trial court denied the motion to recuse on October 28, 2016, stating that she had "done no investigation of defendant's expert witness whatsoever" and that her "actions would not lead a reasonable person to question [her] ability to be impartial." Rather, she only had inquired regarding "what [rehabilitation counselors] might go on to do with their degree and/or their certification" and the availability of court-appointed experts.

On November 1, 2016, the Defendant filed a petition in the Court of Appeals for an accelerated interlocutory appeal of the trial court's denial of the motion for recusal. On December 19, 2016, the Court of Appeals issued a decision reversing the trial court's denial of the motion for recusal. In the lead opinion, Presiding Judge Steven Stafford determined that the trial judge engaged in an independent investigation that allowed the judge to gain personal knowledge of disputed facts. Holsclaw v. Ivy Hall Nursing Home, No. E2016-02178-COA-T10B-CV, 2016 WL 7364901, at *8-9 (Tenn. Ct. App. Dec. 19, 2016). Thus, according to the lead opinion, "an appearance of impropriety was created under Canon 2.11 of the Code of Judicial Conduct necessitating recusal." Id. at *8. Judge Richard Dinkins, in a concurring opinion, "reiterate[d] the conclusion that nothing in the record leads me to believe that the trial judge is biased or prejudiced for or against any party or that there was any improper motive in the court's contact with Dr. Mulkey" but stated that recusal was necessary based on the "limited and specific nature of the court's inquiry and how that inquiry could reasonably create the appearance of impropriety." Id. at *9 (Dinkins, J., concurring). In a dissenting opinion, Judge Charles Susano concluded that recusal was not necessary because the trial judge's conduct did not cause the judge's impartiality reasonably to be questioned. Id. at *9 (Susano, J., dissenting). On February 17, we granted the Plaintiff's accelerated application for permission to appeal to this Court. This Court did not find it necessary to hear oral arguments in this matter. See Tenn. Sup. Ct. R. 10B, § 2.07 ("The Supreme Court . . . may decide the appeal without oral argument.").

## Analysis

The Plaintiff argues that the Court of Appeals erred in reversing the trial court's denial of recusal. Specifically, she contends that the Court of Appeals "applied the wrong test" by deciding that recusal was necessary without determining that "the judge's

impartiality might reasonably be questioned" pursuant to Tennessee Supreme Court Rule 10, Canon 2.11. The Plaintiff also contends that the Defendant is using recusal as a last-ditch tactic to stall trial, given that the Defendant filed two motions for continuance before filing its recusal motion.

The Defendant argues that the trial court erred by obtaining personal knowledge of disputed facts, engaging in ex parte communications with Dr. Mulkey, and undertaking an independent investigation, all of which created a reasonable basis for questioning the trial judge's impartiality. There is no allegation of actual bias by the trial judge in this case.

Pursuant to Tennessee Supreme Court Rule 10B, section 2.07, this Court shall decide an appeal of a recusal matter under this section "on an expedited basis upon a de novo standard of review."

Litigants in Tennessee have a fundamental right to a "fair trial before an impartial tribunal." State v. Austin, 87 S.W.3d 447, 470 (Tenn. 2002). Tennessee Supreme Court Rule 10, Code of Judicial Conduct, Canon 2.11, states that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned," and then provides a non-exhaustive list of circumstances in which the judge's impartiality might reasonably be questioned. This Court has interpreted this provision to require a judge to disqualify himself or herself in any proceeding in which "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." State v. Cannon, 254 S.W.3d 287, 307 (Tenn. 2008) (quoting Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564 (Tenn. 2001)). "[T]he test for recusal is an objective one because the appearance of bias is just as injurious to the integrity of the courts as actual bias." Id. at 307.

Personal Knowledge

Although the Court of Appeals commented that "[n]othing in the record on appeal leads [the Court of Appeals] to believe that the trial judge in this case holds a prejudice or bias against any party or that the trial judge cannot remain impartial despite this communication," Holsclaw, 2016 WL 7364901, at *8, the court determined that "the trial judge gained personal extrajudicial knowledge 'of facts that are in dispute in the proceeding' through her communications with Dr. Mulkey," id. at *8 (quoting Tenn. Sup. Ct. R. 10, Canon 2.11(A)(1)), and accordingly concluded that recusal was warranted. Thus, we turn first to this issue.

We conclude that this determination misapprehends the definition of "personal knowledge" in Tennessee Supreme Court Rule 10. We note that this Court previously

- 5 -

has not addressed this issue. Therefore, we will clarify the type of "personal knowledge" that merits recusal.

Tennessee's rules of judicial conduct require that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including . . . [when] the judge has a personal bias or prejudice concerning a party or a party's lawyer, or *personal knowledge of facts* that are in dispute in the proceeding." Tenn. Sup. Ct. R. 10, Canon 2.11 (emphasis added). In looking to other states that have had occasion to define personal knowledge, we find the Minnesota Supreme Court's definition of "personal knowledge" from Minnesota's recusal statute to be persuasive and instructive. See State v. Dorsey, 701 N.W.2d 238, 247 (Minn. 2005) (defining "personal knowledge" as "knowledge that arises out of a judge's private, individual connection to particular facts" and not including information that a judge learns "in the course of her general judicial capacity or as a result of her day-to-day life as a citizen"); see also United States v. Long, 88 F.R.D. 701, 702 (W.D. Pa. 1981), aff'd, 676 F.2d 688 (3d Cir. 1982) (defining "personal knowledge" as that which a judge obtains as "a witness to the transaction or occurrence not in [their] judicial capacity").

In Dorsey, the Minnesota Supreme Court confronted a case in which the judge had knowledge of facts that contradicted a witness' testimony. 701 N.W.2d at 243. During the course of the case, the judge questioned the defendant's witness' testimony, admitting her knowledge of the facts, and had her clerk investigate to confirm what she thought she knew. Id. at 243-44. The witness' statement was not given credit by the court, and the court ruled against the defendant. Id. at 245. The defendant appealed, arguing that the judge should have disqualified herself due to "personal knowledge of disputed evidentiary facts concerning the proceeding." Id. The Supreme Court of Minnesota explained the meaning of personal knowledge in its recusal statute as follows:

> [T]he requirement that a judge must disqualify herself if she has "personal knowledge of disputed evidentiary facts" is a narrow prohibition, and [] the word "personal" should be interpreted according to its common usage. "Personal" is primarily defined as "of, relating to, or affecting a person," and is regarded as synonymous with "private." Webster's Ninth New Collegiate Dictionary 877 (1987). "Private," in turn, is defined as "restricted to the individual or arising independently of others." Id. at 936. For the purposes of Canon 3D(1)(a), "personal knowledge" pertains to knowledge that arises out of a judge's private, individual connection to particular facts.

Id. at 247. The court then determined that the judge's knowledge was not "personal" and that it was not cause for recusal.[4] Id.

Cases in which a judge is found to have personal knowledge often involve a close relationship between the judge and some substantive fact of a case. One such example is in State v. Smith, where this Court examined a trial judge's personal knowledge of incriminating evidence against a defendant because of the judge's previous role in the prosecution of that same defendant in a separate case. 357 S.W.3d 322, 342 (Tenn. 2011). Accordingly, the Court determined that "a person of ordinary prudence would have a reasonable basis for questioning [his] impartiality." Id.

Unlike the situation in Smith, the trial judge in this case did not have a personal connection to evidence, nor were the merits of the case affected at all by the judge's conduct. The judge in Smith was familiar with the defendant through his previous work as a prosecutor, and that familiarity and personal knowledge created a reasonable basis for questioning the trial judge's impartiality. Id. In contrast, the trial judge in this case has no particular familiarity with either party or the expert at issue, and the information she obtained from her communication with Dr. Mulkey is not of the kind that would bias her toward either party.

Nor does the knowledge in the instant case even rise to the same level as that of the information obtained in Dorsey, in which a trial witness' testimony was discredited due to the trial judge's knowledge. The trial judge in this case sought information about the educational requirements needed to become a certified rehabilitation counselor and the work such experts ordinarily perform because she was unfamiliar with this profession. The trial judge did not seek this information for the purpose of discrediting a party or a witness, or even for the purpose of ruling on whether to allow a particular certified rehabilitation counselor to testify as an expert. Rather, the trial judge sought this information to determine whether such an expert potentially would be able to provide information helpful to resolving the issues in the case and also because the trial judge was considering naming a court-appointed expert but was unsure of the type of expert to appoint.

Accordingly, we hold that the trial judge did not err by declining to recuse herself in the instant case, as any knowledge that can be said to have been obtained by the trial judge in this case does not qualify as "personal knowledge" pursuant to Rule 2.11 of the Rules of Judicial Conduct and does not require recusal of the trial judge on that basis.

---

[4] Despite its determination on the issue of personal knowledge, the court ultimately reversed on the issue of impartiality due to the judge's handling of the case. See id. at 253.

Ex Parte Communication/Independent Investigation

We next determine whether the trial court engaged in an improper ex parte communication or independent investigation pursuant to Tennessee Rule of Judicial Conduct 2.9. Tennessee Rule of Judicial Conduct 2.9 states that "[a] judge shall not initiate, permit, or consider ex parte communications or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter." Tenn. Sup. Ct. R. 10, Canon 2.9(A). Comment 3 under this provision provides clarification that the communications may not be with any "other persons who are not participants in the proceeding," with a few exceptions. Tenn. Sup. Ct. R. 10, Canon 2.9, Comment 3.

Canon 2.9 further requires that a judge refrain from conducting an independent investigation into the facts of a matter. Tenn. Sup. Ct. R. 10, Canon 2.9(C). Rather, a judge should "consider only the evidence presented and any facts that may properly be judicially noticed." Id.

We first will consider whether the trial court's communication qualified as an ex parte communication under Canon 2.9. By contacting Dr. Mulkey, the trial judge communicated with someone who was not a party to the proceeding, outside the presence of the parties or their lawyers, concerning a pending matter. The communication pertained to the educational background, generally, of certified rehabilitation counselors. Given that the matter before the trial court at that time was whether to order the Plaintiff to be examined by a CRC, who later would testify as an expert at trial, the communication with Dr. Mulkey involved a pending matter.

Moreover, none of the exceptions to the prohibition against ex parte communications apply here. One such exception is when "the communication does not involve a substantive matter or an issue on the merits, the judge believes no party will gain an advantage as a result of the communication, and the judge notifies the parties of the substance of the communication and allows them an opportunity to respond." Bean v. Bailey, 280 S.W.3d 798, 804 (Tenn. 2009) (citing Tenn. Sup. Ct. R. 10, Canon 3(B)(7)(a)). Here, the communication involved the general educational qualifications of certified rehabilitation counselors, which directly pertained to the Rule 35 proceeding.

A second exception applies if the judge is consulting with a "disinterested expert on the law applicable to a proceeding," and the judge complies with the notice and opportunity to respond requirements. Id. (citing Tenn. Sup. Ct. R. 10, Canon 3(B)(7)(b)). Here, however, both parties agree that this exception does not apply because Dr. Mulkey was not a legal expert. Thus, the communication qualified as an ex parte communication pursuant to Canon 2.9.

We also hold that this communication between the trial judge and Dr. Mulkey qualifies as an independent investigation under Canon 2.9. In considering the trial judge's actions in this matter, the Court of Appeals determined that "whether Mr. Smith would be permitted to testify as a CRC was a matter in dispute and, rather than relying solely on matters learned in the courtroom, the trial judge made an independent investigation into the CRC program to help her adjudicate that dispute." Holsclaw, 2016 WL 7364901, at *6. Although we recognize that the trial judge had no discussion related to the specific facts of this case or to Mr. Smith's specific qualifications, we, nevertheless, agree with the Court of Appeals and conclude that this action by the trial court constituted an independent investigation under Canon 2.9.

## Impartiality Might Reasonably Be Questioned

Our determination that the trial judge engaged in action qualifying as an ex parte communication and an independent investigation does not end our inquiry. We now must consider the issue of whether the trial judge's communication and independent investigation required her to recuse herself. Runyon v. Runyon, No. W2013-02651-COA-T10B, 2014 WL 1285729, at *9 (Tenn. Ct. App. Mar. 31, 2014) ("Generally, an ex parte communication requires recusal only where it creates an appearance of partiality or prejudice against a party so as to call into question the integrity of the judicial process."). Specifically, we must determine whether the trial judge's impartiality might reasonably be questioned by "a person of ordinary prudence in the judge's position, knowing all of the facts known the judge." Cannon, 254 S.W.3d at 307 (quoting Davis, 38 S.W.3d at 564); see also Tenn. Sup. Ct. R. 10, Canon 2.11.

We note that the Court of Appeals did not consider separately whether the trial judge's impartiality might reasonably be questioned. Rather, that court determined that, because the trial judge "gained personal extrajudicial knowledge 'of facts that are in dispute in the proceeding' . . . . , an appearance of impropriety was created under Canon 2.11 of the Code of Judicial Conduct necessitating recusal." Holsclaw, 2016 WL 7364901, at *8; see also Tenn. Sup. Ct. R. 10, Canon 2.11(A)(1) ("A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances: (1) The judge has . . . personal knowledge of facts that are in dispute in the proceeding.").

Based upon our independent review of this separate issue, nothing in the record leads us to the conclusion that a person of ordinary prudence, knowing all the facts available to the trial judge in this case, would question whether she can be impartial in the proceedings. At all times in the proceedings, the trial judge was open, honest, and forthright about her communication with Dr. Mulkey. At no point did the trial judge discuss the Defendant's expert specifically with Dr. Mulkey. She did not investigate the Defendant's proposed expert. She merely ascertained what the CRC program at the University of Tennessee entailed so that she could understand what type of certification

CRCs generally receive and what CRCs generally do or do not do, all with the aim of educating herself so that she could rule on whether or not the trial court should let *any* CRC testify as an expert. Moreover, at the time of the trial judge's communication and investigation, the trial court was entertaining the thought of appointing a court-appointed expert to testify regarding the Plaintiff's potential vocational disability.

While perhaps ill-advised because she did not consult with the parties first, the trial judge simply sought general information regarding whether a court-appointed CRC would be a workable option to help the parties resolve their dispute. And importantly, the trial judge ultimately allowed the Defendant's proposed expert to examine the Plaintiff again, even though the matter had been pending for almost four years. In sum, the trial judge's conduct throughout these proceedings would not give a person of ordinary prudence reason to question her impartiality.

## CONCLUSION

We hold that the trial judge's actions in the proceedings below did not necessitate recusal.[5] Accordingly, we reverse the decision of the Court of Appeals and reinstate the judgment of the trial court denying recusal.

PER CURIAM

J. PAGE, DISSENTING.

---

[5] Although we have concluded that recusal is not necessary under the specific facts of this case, it would be the better practice for a judge first to notify the parties and gain their consent before making similar inquiries in the future.

- 10 -