IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs

**STATE OF TENNESSEE v. ISAIAH STYLES**

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 114370        Kyle A. Hixson, Judge**

_____

**No. E2020-00176-SC-T10B-CO**

_____

This case is one of three cases decided today by this Court involving a trial judge who previously served as a deputy district attorney general in Knox County at the time the defendants in each case were indicted by the Knox County Grand Jury. After a subsequent appointment to serve as a trial judge in Knox County Criminal Court, the trial judge was assigned to the defendants' cases. The defendant in this case moved for recusal, arguing that the trial judge previously had supervisory authority over his case as Deputy District Attorney General. The trial judge denied the motion for recusal, and the defendant filed an appeal in the Court of Criminal Appeals pursuant to Tennessee Supreme Court Rule 10B, section 2. The Court of Criminal Appeals reversed the trial judge's decision, holding that recusal of the trial judge was necessary. We then granted the State's accelerated application for permission to appeal to this Court. This Court issued a separate opinion today in State v. Griffin, __ S.W.3d __, __, No. E2020-00327-SC-T10B-CO (Tenn. 2020), which is controlling to the outcome of this case.[1] Specifically, we held in Griffin that the defendant failed to establish that the trial judge's supervisory responsibilities in his role as a deputy district attorney general were personal or substantial in that case. Id. We hold that the same is true for this case. Therefore, for the reasons provided in Griffin, we reverse the decision of the Court of Criminal Appeals and reinstate the trial court's denial of recusal in this case.

**Tenn. Sup. Ct. R. 10B Accelerated Appeal by Permission; Judgment of the**
**Court of Criminal Appeals Reversed; Judgment of the Trial Court Reinstated**

PER CURIAM.

---

[1] In addition to State v. Griffin, No. E2020-00327-CCA-T10B-CO (Tenn. Crim. App. Mar. 23, 2020), perm. app. granted (Tenn. June 4, 2020), we also granted permission to appeal in State v. Clark, No. E2020-00416-CCA-T10B-CO (Tenn. Crim. App. Mar. 10, 2020), perm. app. granted (June 4, 2020), which involves an identical recusal issue stemming from Judge Hixson's prior role as Deputy District Attorney General. The Court is concurrently releasing the opinion in Clark as well.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; Nicholas W. Spangler, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha M. Fitzgerald, Assistant District Attorney General, for the appellant, State of Tennessee.

Gregory Paul Isaacs and J. Franklin Ammons, Knoxville, Tennessee, for the appellee, Isaiah Styles.

## OPINION

### Factual and Procedural Background

In November 2018, Mr. Kyle A. Hixson was serving as Deputy District Attorney General for the Sixth Judicial District of Tennessee, which consists of Knox County. The Knox County Grand Jury indicted the defendant in this case on November 27, 2018, for felony murder, first degree murder, robbery, theft, burglary of a vehicle, evading arrest, and resisting arrest.

On December 10, 2019, Governor Bill Lee appointed Mr. Hixson to serve as the trial judge in the Knox County Criminal Court. Mr. Hixson took the oath of office on January 1, 2020, and was assigned to preside over the defendant's case.

On January 9, 2020, the defendant filed a motion to recuse the trial court judge. The defendant argued that the trial judge's prior employment and responsibilities within that employment created the "appearance of a conflict" because the trial judge supervised the prosecution of the defendant's case. As support, the defendant provided a campaign letter, which stated, in pertinent part:

> Kyle most recently served in an executive position as Deputy District Attorney General. He supervises all criminal prosecutions in Knox County, a jurisdiction where up to 60,000 new criminal cases arise every year. In addition to managing an office of [eighty] attorneys and support staff, Kyle oversees prosecutions in [seven] courtrooms plus the Knox County Grand Jury.

This recusal matter was heard on January 17, 2020. At the hearing, Assistant District Attorney ("ADA") TaKisha M. Fitzgerald, the prosecutor in the case, stated that "[t]he State has absolutely no proof that [the trial judge] has had any dealings with this case." Later in the hearing, she stated, "Your Honor, we believe there is absolutely no conflict at all with Your Honor hearing this case, presiding over this case. In looking through the file, . . . there's no indication at all in that file that Your Honor has handled that case."

- 2 -

On January 22, 2020, the trial court denied the recusal motion by written order. The trial judge stated:

> From April 24, 2018 through December 31, 2019, DAG Allen employed an executive team of Chief Deputy DA Sam K. Lee, Deputy DA Leland L. Price, and Deputy DA Kyle A. Hixson. This executive team divided administrative responsibilities within the office. These responsibilities included the management of over ten specialized prosecution units, as well as the operation of seven courtrooms with criminal jurisdiction. The executive team oversaw prosecutions within the Juvenile Court for Knox County. Additionally, it managed the DA's counsel to the Knox County Grand Jury. While all members of the executive team held supervisory authority over all prosecutorial matters within the office, each member of the team was assigned primary responsibility over certain units and prosecutors within those units. Throughout 2018, Deputy DA Price was the direct, primary supervisor of ADA Fitzgerald and prosecutions within her unit, which included the prosecution of the instant case. Similarly, prosecutors and staff assigned to the Knox County Grand Jury in 2018 did not report directly to Deputy DA Hixson for day-to-day issues. Prosecutors and staff within that unit, as was the case with ADA Fitzgerald's unit, only consulted with Deputy DA Hixson on an as-needed basis on particular cases and policy issues. As stated, such consultations never involved the instant case.

(Footnote omitted).

In analyzing the facts, the trial judge stated:

> In this case, it is clear that there is no actual conflict of interest that would prevent the [trial judge] from fairly adjudicating this matter. The [trial judge] never worked on nor discussed the facts of this case with others during his time as a prosecutor. Thus, the question becomes whether "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Bean v. Bailey, 280 S.W.3d 798, 805 (Tenn. 2009) [(quoting Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564 (Tenn. 2001))]. The circumstances of this case call for the conclusion that a reasonable person would not question the Court's continued involvement in this case as trial judge.
>
> Similarly to Cormia [v. State, No. E2010-02290-CCA-R3-PC, 2011 WL 5027107, at *14 (Tenn. Crim. App. Oct. 21, 2011,] and Wells [v. State, No. M2002-01303-CCA-R3-PC, 2003 WL 21713424, at *5 (Tenn. Crim. App. July 23, 2003)], the [trial judge]'s responsibilities as Deputy DA did

not include primary supervision of cases within ADA Fitzgerald's unit or the Grand Jury. These cases indicate that a conflict of interest is not imputed to a judge-then-prosecutor simply by virtue of his previous status as a supervisor within the prosecutor's office. While ADA Fitzgerald was free to consult with Deputy DA Hixson when the need arose, that never occurred on this case.

A reasonable person would not question these circumstances. Knox County is a large jurisdiction. New cases here number in the tens of thousands annually. It would come as no surprise to a reasonable person to learn that a single member of a four-person executive team would not possess knowledge of an individual case from this multitude, particularly when that case was assigned to a unit for which that supervisor was not primarily responsible. The [trial judge] is confident that [his] continued involvement in this case would not be injurious to the public's perception of the impartial role of the judiciary. After careful consideration, the [trial judge] concludes that a person of ordinary prudence would not reasonably question the [trial judge]'s impartiality in this case.

On January 31, 2020, the defendant filed a petition for recusal appeal from the trial court's denial of recusal. On March 10, 2020, the Court of Criminal Appeals granted the petition for recusal and ordered that the trial judge be recused in this matter. In making its decision, the Court of Criminal Appeals focused on the trial judge's statements as to his supervisory duties in his prior role as a deputy district attorney general. The court held, "Regardless of what the trial judge subjectively believed, we conclude that these circumstances create an objectively reasonable question of the trial judge's impartiality in this case and that, therefore, the trial judge erred in denying the defendant's motion to recuse." Order, State v. Styles, No. E2020-00327-CCA-T10B-CO (Tenn. Crim. App. Mar. 10, 2020).

The State then filed an accelerated application for permission to appeal on March 31, 2020, which this Court granted on June 4, 2020. This Court did not find it necessary to hear oral arguments in this matter. See Tenn. Sup. Ct. R. 10B, § 2.07 ("The Supreme Court . . . may decide the appeal without oral argument.").

## Analysis

Tennessee Supreme Court Rule 10B, section 2.07 provides that this Court shall decide an appeal of a recusal matter under this section "on an expedited basis upon a de novo standard of review."

"Litigants in Tennessee have a fundamental right to a 'fair trial before an impartial tribunal.'" Holsclaw v. Ivy Hall Nursing Home, Inc., 530 S.W.3d 65, 69 (Tenn. 2017)

- 4 -

(quoting State v. Austin, 87 S.W.3d 447, 470 (Tenn. 2002)); see Tenn. Const. art. VI § 11 ("No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested . . . ."). Tennessee's Rules of Judicial Conduct require judges to "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary," Tenn. Sup. Ct. R. 10, RJC 1.2, and to "uphold and apply the law, and . . . perform all duties of judicial office fairly and impartially." Tenn. Sup. Ct. R. 10, RJC 2.2. Our rules define "impartiality" and "impartially" as the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." Tenn. Sup. Ct. R. 10, Terminology "Impartiality."

Tennessee Supreme Court Rule 10, Code of Judicial Conduct, Canon 2.11, states that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Bases for which a judge's impartiality might reasonably be questioned include, as are pertinent to this case, when the judge has "a personal bias or prejudice" against any of the parties, "personal knowledge of facts that are in dispute in the proceeding," has "served as lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association," or has "served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding." Tenn. Sup. Ct. R. 10, RJC 2.11 (A)(1), (A)(6)(a) and (b).

"[T]he test for recusal is an objective one because the appearance of bias is just as injurious to the integrity of the courts as actual bias." State v. Cannon, 254 S.W.3d 287, 307 (Tenn. 2008). Thus, the test for recusal requires a judge to disqualify himself or herself in any proceeding in which "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Id. (quoting Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564 (Tenn. 2001)); see also Clinard v. Blackwood, 46 S.W.3d 177, 187 (Tenn. 2001) ("[B]ecause judges have a privileged understanding of the legal system, they may fail to find an appearance of impropriety where one would be found by a layperson.").

As stated above, a judge's impartiality might reasonably be questioned when the judge:

> served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association; [or] *served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding*, or has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy[.]

Tenn. Sup. Ct. R. 10, RJC 2.11(A)(6)(a), (b) (emphasis added).

- 5 -

This case presents an identical issue to that raised in <u>Griffin</u> and <u>Clark</u>, both of which this Court also decided today. <u>See Griffin</u>, __ S.W.3d __, __, No. E2020-00327-SC-T10B-CO; <u>State v. Clark</u>, __ S.W.3d __, __, No. E2020-00416-SC-T10B-CO (Tenn. 2020). The trial judge in all three of these cases served in a governmental position, namely as Deputy District Attorney General, in which he had broad and general supervisory authority over many cases. Thus, the pertinent question for purposes of this appeal is whether this supervisory authority amounted to the trial judge's participating "personally and substantially" in this case such that his impartiality might reasonably be questioned. Tenn. Sup. Ct. R. 10, RJC2.11(A)(6)(b). To answer this question in <u>Griffin</u>, this Court considered "(1) whether the trial judge had direct supervisory authority over the assistant district attorney in the case; and (2) whether the trial judge had any direct involvement in the case." <u>Griffin</u>, __ S.W.3d at __, No. E2020-00327-SC-T10B-CO; <u>see also</u> <u>Wells</u>, 2003 WL 21713423, at *5 ("[T]he undisputed record in this case reflects the judge-then-prosecutor had no supervisory responsibilities over the case or prosecutor, nor any involvement in the case 'either directly or indirectly.'"); <u>Cormia</u>, 2011 WL 5027107, at *14 ("[S]upervisory authority, without more, is not enough to disqualify a judge. The Petitioner's broad allegation of a 'possible' conflict of interest is not supported by any documentary evidence from trial counsel or any other source and, therefore, a remand is not required on the record before us."); <u>Minor ex rel. Hardin v. State</u>, No. M2001-00545-CCA-R10-PC, 2001 WL 1545498, at *9-10 (Tenn. Crim. App. Dec. 5, 2001) (holding that, even though the judge had held a supervisory position with the district attorney's office, recusal was not necessary because the judge "had no involvement, whether investigatory or supervisory, with the petitioner's criminal case while she was in the district attorney's office," and the judge "had departed from the district attorney's office over one year prior to the indictment's return").

This Court reviewed the parties' filings in <u>Griffin</u>, including the trial judge's application and the printed webpage from his campaign website. We determined that, despite the trial judge's statement regarding his prior, general supervisory responsibilities, the trial judge had no knowledge or involvement, supervisory or otherwise, with that case, and the judge's recollection was supported by the statement of ADA Fitzgerald. <u>Griffin</u>, __ S.W.3d at __, No. E2020-00327-SC-T10B-CO. Thus, we held:

> [K]nowing all the facts known to the trial judge in this case, including that he did not supervise the ADA in this case and had no actual involvement with this case, a person of ordinary prudence would not find a reasonable basis for questioning the trial judge's impartiality. <u>See</u> [Cannon, 254 S.W.3d at 307]. Accordingly, the trial judge properly denied the motion for recusal in this case.

<u>Griffin</u>, __ S.W.3d at __, No. E2020-00327-SC-T10B-CO.

Similarly, in this case, the defendant relied on a campaign letter, which stated, in pertinent part:

Kyle most recently served in an executive position as Deputy District Attorney General. He supervises all criminal prosecutions in Knox County, a jurisdiction where up to 60,000 new criminal cases arise every year. In addition to managing an office of [eighty] attorneys and support staff, Kyle oversees prosecutions in [seven] courtrooms plus the Knox County Grand Jury.

As in Griffin, we read the description of his role as provided in the campaign letter to be an overview of his general supervisory responsibilities. See Griffin, __ S.W.3d at __, No. E2020-00327-SC-T10B-CO. Without more, this description does not demonstrate or even indicate that the trial judge participated personally or substantially in the present case. Although the letter states that he supervised "all" criminal prosecutions in Knox County, again we determine that "a reasonable person would be hard-pressed to believe, based solely on this statement, that the trial judge's participation in up to 60,000 new criminal cases a year was 'personal and substantial.'" Id.

Moreover, the testimony of ADA Fitzgerald at the hearing on the recusal motion also indicates that the trial judge had no direct involvement in this case. The trial judge also confirmed his complete lack of involvement in this case. Therefore, we hold that the defendant in this case failed to establish that the judge, as a former deputy district attorney general, participated in this case in any way that was personal or substantial. Furthermore, we hold that "a person of ordinary prudence in the judge's position, knowing all the facts known to the judge," would have no reasonable basis to question the trial judge's impartiality in this case. Cannon, 254 S.W.3d at 307 (quoting Liberty Mut. Ins. Co., 38 S.W.3d at 564). Accordingly, for all the reasons provided and further expounded in Griffin, we likewise hold that the trial judge properly denied the defendant's motion for recusal in this case. See Griffin, __ S.W.3d at __, No. E2020-00327-SC-T10B-CO.[2]

## CONCLUSION

We hold that the trial judge properly denied the motion for recusal because "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge," would not find a reasonable basis to question the trial judge's impartiality. Cannon, 254 S.W.3d at 307. We base this decision on our opinion issued today in Griffin. Accordingly,

---

[2] As noted in Griffin, we use this opportunity to caution applicants and candidates for judicial positions about potential adverse consequences arising from statements in applications or campaigns. Applicants and candidates must carefully refrain from overstating past experiences and responsibilities. Such actions can have significant unintended consequences. Our decision today in no way should be construed as condoning the use of overstatements in judicial applications or campaigns. See Griffin, __ S.W.3d at __, No. E2020-00327-SC-T10B-CO.

we reverse the decision of the Court of Criminal Appeals and reinstate the judgment of the trial judge denying recusal.

PER CURIAM