# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### Submitted on Briefs

## STATE OF TENNESSEE v. DECOSIO JACQUES CLARK

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 114934      Kyle A. Hixson, Judge**

_____

**No. E2020-00416-SC-T10B-CO**

_____

The defendant in this case is a co-defendant below with the defendants in the matter, State v. Griffin, __ S.W.3d __, __, No. E2020-00327-SC-T10B-CO (Tenn. 2020). This Court issued a separate opinion today in Griffin which is controlling to the outcome of this case. See id. Specifically, we held in Griffin that the trial judge properly denied recusal, even though he served as a Deputy District Attorney General in Knox County at the time the defendants were indicted by the Knox County Grand Jury.[1] Id. For the reasons provided in Griffin, we reverse the decision of the Court of Criminal Appeals in this case and reinstate the trial court's denial of recusal.

**Tenn. Sup. Ct. R. 10B Accelerated Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed; Judgment of the Trial Court Reinstated**

PER CURIAM.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; Nicholas W. Spangler, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha M. Fitzgerald, Assistant District Attorney General, for the appellant, State of Tennessee.

Danny C. Garland, II, Knoxville, Tennessee, for the appellee, Decosio Jacques Clark.

---

[1] In addition to State v. Griffin, No. E2020-00327-CCA-T10B-CO (Tenn. Crim. App. Mar. 23, 2020), we also granted permission to appeal in State v. Styles, No. E2020-00176-CCA-T10B-CO (Tenn. Crim. App. Mar. 10, 2020), which also involves an identical recusal issues stemming from Judge Hixson's prior role as Deputy District Attorney General. The Court is concurrently releasing the Styles opinion as well.

# OPINION

## Factual and Procedural Background

The defendant in this appeal is a co-defendant in a matter presently pending before the Knox County Criminal Court which has other defendants who are parties to a separate appeal regarding the potential recusal of the trial judge. See State v. Griffin, __ S.W.3d __, __, No. E2020-00327-SC-T10B-CO (Tenn. 2020). In February 2019, Kyle A. Hixson was serving as the Deputy District Attorney General for the Sixth Judicial District of Tennessee, which consists of Knox County. The Knox County Grand Jury indicted the defendant in this case on February 19, 2019, for conspiracy to possess a controlled substance with intent to sell or deliver, employing a firearm during a dangerous felony, violation of the RICO Act, first degree murder, possession with intent to sell or deliver cocaine, and possession of a firearm during a dangerous felony.

On December 10, 2019, Governor Bill Lee appointed Mr. Hixson to serve as the trial judge in the Knox County Criminal Court. Mr. Hixson took the oath of office on January 1, 2020, and was assigned to preside over the defendants' cases.

On January 30, 2020, the defendant filed a motion to recuse the trial judge. The defendant argued that the trial judge's prior role as a deputy district attorney general raised an appearance of impropriety as it pertains to his serving as trial judge in the defendant's case. The defendant's motion was heard along with his co-defendants' motions for recusal. At the hearing,[2] the defendants submitted the trial judge's sworn application for nomination to judicial office, as well as a printed copy of a website for the trial judge.[3] The trial judge's application stated, in pertinent part:

> I currently serve as Deputy District Attorney General for the Sixth Judicial District of Tennessee. Our office is solely responsible for all criminal prosecutions in Knox County. In order to fulfill this prosecutorial function, our office staffs three divisions of the Criminal Court, four criminal divisions of the General Sessions Court, the Grand Jury, and the Juvenile Court. As provided by law, our lawyers may also appear from time to time in Circuit Court, Chancery Court, or the civil division of the General Sessions Court.

---

[2] The filings provided in this appeal do not include a transcript of the hearing on the recusal motions. Therefore, we rely upon the trial judge's order denying recusal for an understanding of what occurred at the hearing.

[3] Over the State's objections, the trial judge accepted as evidence at the hearing on these motions both the judicial application and the printed version of the trial judge's campaign website, taking judicial notice "that the printed webpage fairly and accurately represents a page on www.electkylehixson.com."

In my role as Deputy District Attorney General, I am the direct supervisor for a staff of almost [eighty] employees, including [forty] Assistant District Attorneys General. My supervisory duties include the setting of parameters for plea negotiations, review and approval of cases bound over from the General Sessions Court to the Grand Jury and Criminal Court, approval of cases presented for direct review by the Grandy Jury, regular meetings with personnel to ensure compliance with office policy and ethical standards, and the review of cases for possible appeal to the Court of Criminal Appeals.

. . . .

In addition to my supervisory duties, I have maintained my own caseload during my time as Deputy District Attorney General. I have prosecuted multiple cases to jury trials, including cases of first degree murder, second degree murder, voluntary manslaughter, vehicular homicide, aggravated rape, felony drug charges, aggravated assault, simple assault, and resisting arrest. I have personally prosecuted countless other cases that did not culminate in a jury trial. I have worked with law enforcement officers to coordinate investigative efforts prior to charge. In this capacity, I have worked with state and federal agents to obtain warrants and orders from state court judges.

The website stated the following, in pertinent part:

Kyle has dedicated his career to public service. He has served two stints in the Office of the Knox County District Attorney General. First, he served as an Assistant District Attorney General, where he earned a reputation as a hardworking trial attorney capable of handling complex criminal cases, including homicides and sexual assaults. Second, since 2014, he has served in an executive position as Deputy District Attorney General. Kyle currently supervises all criminal prosecutions in Knox County, a jurisdiction where up to 60,000 new criminal cases arise every year. In addition to managing an office of [eighty] attorneys and support staff, Kyle oversees prosecutions in seven courtrooms plus the Knox County Grand Jury. He works closely with judicial staff and other public offices and agencies to ensure proper operation of the Knox County criminal justice system. Despite his busy management schedule, Kyle still personally participates in some of the Office's most complex criminal litigation in the courtroom.

About Kyle Hixson, https://www.electkylehixson.com/about (last visited Oct. 22, 2020).

- 3 -

On February 20, 2020, the trial judge entered an order denying the defendant's motion for recusal as well as the motions of his co-defendants. Initially, the trial judge stated that Assistant District Attorney General ("ADA") TaKisha Fitzgerald, the prosecutor handling the case, had:

> stated that she has no indication that the [trial judge] directly worked on the instant prosecution during his previous employment. Further ADA Fitzgerald indicated on the record that she does not recall ever discussing the instant case with the [trial judge] during his employment at the District Attorney's Office. These assertions are consistent with the [trial judge]'s recollection of his lack of involvement with this case.

Furthermore, the trial judge stated:

> At all times relevant to these Motions, DAG Allen employed an executive team of Chief Deputy DA Sam K. Lee, Deputy DA Leland L. Price, and Deputy DA Kyle A. Hixson [the trial judge]. This executive team divided administrative responsibilities within the office. These responsibilities included the management of over ten specialized prosecution units, as well as the operation of seven courtrooms with criminal jurisdiction. The executive team oversaw prosecutions within the Juvenile Court for Knox County. Additionally, it managed the DA's counsel to the Knox County Grand Jury. While all members of the executive team held supervisory authority over all prosecutorial matters within the office, each member of the team was assigned primary responsibility over certain units and prosecutors within those units. At all relevant times, [the trial judge] was not the direct, primary supervisor of ADAs Fitzgerald and Phil Morton and prosecutions within their unit, which included the prosecution of the instant case. Similarly, prosecutors and staff assigned to the Knox County Grand Jury in 2019 did not report directly to [the trial judge] for day-to-day issues. Prosecutors and staff within that unit, as was the case with ADA Fitzgerald's unit, only consulted with [the trial judge] on an as-needed basis on particular cases and policy issues. As stated, such consultations never involved the instant case.
>
> In the [trial judge]'s prior capacity as Deputy DA, he sometimes reviewed proposed charging instruments prior to their submittal to the Knox County Grand Jury. He never reviewed the present charging instruments prior to their presentment to the Grand Jury. He never reviewed or approved the DA's form templates for charging cases pursuant to the Racketeer Influenced and Corrupt Organization (RICO) Act of 1989.

Upon taking office, the [trial judge] issued orders disqualifying himself on several cases that were pending in Criminal Court, Division II. In these cases, the [trial judge] had been directly involved either as a prosecutor or a supervisory prosecutor.

(Footnote omitted).

In analyzing the facts, the trial judge stated:

In this case, it is clear that there is no actual conflict of interest that would prevent the [trial judge] from fairly adjudicating this matter. The [trial judge] never worked on nor discussed the facts of this case with others during his time as a prosecutor. Thus, the question becomes whether "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Bean v. Bailey, 280 S.W.3d 798, 805 (Tenn. 2009) [(quoting Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564 (Tenn. 2001))]. The circumstances of this case call for the conclusion that a reasonable person would not question the [trial judge]'s continued involvement in this case as a trial judge.

Similarly to Cormia [v. State, No. E2010-02290-CCA-R3-PC, 2011 WL 5027107, at *14 (Tenn. Crim. App. Oct. 21, 2011,] and Wells [v. State, No. M2002-01303-CCA-R3-PC, 2003 WL 21713423, at *5 (Tenn. Crim. App. July 23, 2003)], the [trial judge]'s responsibilities as Deputy DA did not include primary supervision of cases within ADA Fitzgerald's unit or the Grand Jury. These cases indicate that a conflict of interest is not imputed to a judge-then-prosecutor simply by virtue of his previous status as a supervisor within the prosecutor's office. While ADA Fitzgerald was free to consult with [the trial judge] when the need arose, that never occurred on this case.

The Defendants raise the issue of their pending motions related to the sufficiency of the Presentment in this case. Their argument is that for the trial [judge] to rule in their favor on these motions, [he] must concede that [he] failed in his prior employment as Deputy DA as it relates to supervision of the Grand Jury. This argument fails because the trial [judge] never worked on any of the issues raised by the Defendants in their motions regarding the charging instrument.[4] Carried to its logical conclusion, this argument means

---

[4] For the purposes of adjudicating these Motions, the Court has reviewed the substantive issues raised in the Defendants' pending motions, including Defendant Jackson's Motion to Sever Counts, Motion to Dismiss Counts X, XI, and XII, and Motion to Dismiss; Defendant Tate's Motion to Sever Counts,

that the trial court could never rule against the State on a case that pended during his prior employment without somehow impugning his job performance during that time. While this may be true for issues or cases on which the trial [judge] had direct involvement as a prosecutor, this connection is simply too tenuous for all other cases. A reasonable person of ordinary prudence would not question the trial court's ability to decide an issue when he had no involvement with that issue during his time as a prosecutor.

The [trial judge] is confident that [his] continued involvement in this case would not be injurious to the public's perception of the impartial role of the judiciary. After careful consideration, the [trial judge] concludes that a person of ordinary prudence would not reasonably question the [trial judge]'s impartiality in this case.

(Footnote in original).

On March 12, 2020, the defendant filed a petition for recusal appeal from the trial court's denial of recusal. On March 23, 2020, the Court of Criminal Appeals granted the petition for recusal and ordered that the trial judge be recused in this matter. Order, State v. Clark, No. E2020-00416-CCA-T10B-CO (Tenn. Crim. App. Mar. 23, 2020). The Court of Criminal Appeals reversed the decision of the trial court and held that the trial judge's recusal was necessary in this case, fully relying on its order entered in State v. Griffin, No. E2020-00327-CCA-T10B-CO (Tenn. Crim. App. Mar. 23, 2020).

The State then filed an accelerated application for permission to appeal on April 9, 2020, which this Court granted on June 4, 2020. This Court did not find it necessary to hear oral arguments in this matter. See Tenn. Sup. Ct. R. 10B, § 2.07 ("The Supreme Court . . . may decide the appeal without oral argument.").

## Analysis

Tennessee Supreme Court Rule 10B, section 2.07, provides that this Court shall decide an appeal of a recusal matter under this section "on an expedited basis upon a de novo standard of review."

---

Motion to Dismiss Counts X and XII and Motion to Adopt Sidarius Jackson's Motion to Dismiss Counts X, XI, and XII, and Motion to Dismiss and Motion to Adopt Sidarius Jackson's Motion to Dismiss; Defendant Clark's Motion to Dismiss; and Defendant Cody's Motion to Sever Counts. The Court finds that these motions—similar to motions heard by the Court on a daily basis—raise legal issues pertaining to the charging instrument, the relevant statutes, and the application of the Tennessee Rules of Criminal Procedure. Regardless of how the Court rules on these motions, such a ruling will simply resolve a legal question and will not impugn nor reflect negatively on the Office of the District Attorney General or its practices and procedures.

"Litigants in Tennessee have a fundamental right to a 'fair trial before an impartial tribunal.'" Holsclaw v. Ivy Hall Nursing Home, Inc., 530 S.W.3d 65, 69 (Tenn. 2017) (quoting State v. Austin, 87 S.W.3d 447, 470 (Tenn. 2002)); see Tenn. Const. art. VI, § 11 ("No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested . . . ."). Tennessee's Rules of Judicial Conduct require judges to "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary," Tenn. Sup. Ct. R. 10, RJC 1.2, and to "uphold and apply the law, and . . . perform all duties of judicial office fairly and impartially." Tenn. Sup. Ct. R. 10, RJC 2.2. Our rules define "impartiality" and "impartially" as the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." Tenn. Sup. Ct. R. 10, Terminology "Impartiality."

Tennessee Supreme Court Rule 10, Code of Judicial Conduct, Canon 2.11, states that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Bases for which a judge's impartiality might reasonably be questioned include, as are pertinent to this case, when the judge has "a personal bias or prejudice" against any of the parties, "personal knowledge of facts that are in dispute in the proceeding," has "served as lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association," or has "served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding." Tenn. Sup. Ct. R. 10, RJC 2.11 (A)(1), (A)(6)(a) and (b).

"[T]he test for recusal is an objective one because the appearance of bias is just as injurious to the integrity of the courts as actual bias." State v. Cannon, 254 S.W.3d 287, 307 (Tenn. 2008). Thus, the test for recusal requires a judge to disqualify himself or herself in any proceeding in which "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Id. (quoting Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 564 (Tenn. 2001)); see also Clinard v. Blackwood, 46 S.W.3d 177, 187 (Tenn. 2001) ("[B]ecause judges have a privileged understanding of the legal system, they may fail to find an appearance of impropriety where one would be found by a layperson.").

As stated above, a judge's impartiality might reasonably be questioned when the judge:

> served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association; [or] *served in governmental employment, and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding*, or has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy[.]

- 7 -

Tenn. Sup. Ct. R. 10, RJC 2.11(A)(6)(a), (b) (emphasis added).

This case presents an identical issue to that raised in Griffin, which this Court also decided today. See Griffin, __ S.W.3d at __, No. E2020-00327-SC-T10B-CO. The trial judge in these cases served in a governmental position, namely as Deputy District Attorney General, in which he had broad and general supervisory authority over many cases. Thus, the pertinent question for purposes of this appeal is whether this supervisory authority amounted to the trial judge's participating "personally and substantially" in this case such that his impartiality might reasonably be questioned. Tenn. Sup. Ct. R. 10, RJC 2.11(A)(6)(b). To answer this question in Griffin, this Court considered "(1) whether the trial judge had direct supervisory authority over the assistant district attorney in the case; and (2) whether the trial judge had any direct involvement in the case." Griffin, __ S.W.3d at __, No. E2020-00327-SC-T10B-CO; see also Wells, 2003 WL 21713423, at *5 ("[T]he undisputed record in this case reflects the judge-then-prosecutor had no supervisory responsibilities over the case or prosecutor, nor any involvement in the case 'either directly or indirectly.'"); Cormia, 2011 WL 5027107, at *14 ("[S]upervisory authority, without more, is not enough to disqualify a judge. The Petitioner's broad allegation of a 'possible' conflict of interest is not supported by any documentary evidence from trial counsel or any other source and, therefore, a remand is not required on the record before us."); Minor ex rel. Hardin v. State, No. M2001-00545-CCA-R10-PC, 2001 WL 1545498, at *9-10 (Tenn. Crim. App. Dec. 5, 2001) (holding that, even though the judge had held a supervisory position with the district attorney's office, recusal was not necessary because the judge "had no involvement, whether investigatory or supervisory, with the petitioner's criminal case while she was in the district attorney's office," and the judge "had departed from the district attorney's office over one year prior to the indictment's return").

This Court reviewed the parties' filings in Griffin, including the trial judge's application and the printed webpage from his campaign website. We determined that, despite the trial judge's statement regarding his prior, general supervisory responsibilities, the trial judge had no knowledge or involvement, supervisory or otherwise, with that case, and the judge's recollection was supported by the statement of ADA Fitzgerald. Griffin, __ S.W.3d at __, No. E2020-00327-SC-T10B-CO. Thus, we held:

> [K]nowing all the facts known to the trial judge in this case, including that he did not supervise the ADA in this case and had no actual involvement with this case, a person of ordinary prudence would not find a reasonable basis for questioning the trial judge's impartiality. See [Cannon, 254 S.W.3d at 307]. Accordingly, the trial judge properly denied the motion for recusal in this case.

Griffin, __ S.W.3d at __, No. E2020-00327-SC-T10B-CO.

As stated above, this case involves a defendant who is co-defendant with the defendants in Griffin; the hearing on all the recusal motions in both cases was a joint

hearing; and the defendants in both cases introduced the same evidence at the hearing, namely, the trial judge's judicial application and a printed copy of his campaign website. As in <u>Griffin</u>, we hold that the defendant has failed to establish that the trial judge, in his prior role as a deputy district attorney general, participated personally or substantially in the defendant's case. Thus, we hold that "a person of ordinary prudence in the judge's position, knowing all the facts known to the judge," would have no reasonable basis to questions the trial judge's impartiality in this case. <u>Cannon</u>, 254 S.W.3d at 307 (quoting <u>Liberty Mut. Ins. Co.</u>, 38 S.W.3d at 564). Accordingly, for all the reasons provided and further expounded in <u>Griffin</u>, we likewise hold that the trial judge properly denied the defendant's motion for recusal in this case. <u>See</u> <u>Griffin</u>, __ S.W.3d at __, No. E2020-00327-SC-T10B-CO.[5]

## CONCLUSION

We hold that the trial judge properly denied the motion for recusal because "a person of ordinary prudence in the judge's position, knowing all of the facts known to the trial judge," would not find a reasonable basis to question the judge's impartiality. <u>Cannon</u>, 254 S.W.3d at 307. We base this decision on our opinion issued today in <u>Griffin</u>. Accordingly, we reverse the decision of the Court of Criminal Appeals and reinstate the judgment of the trial judge denying recusal.

PER CURIAM

---

[5] As noted in <u>Griffin</u>, we use this opportunity to caution applicants and candidates for judicial positions about potential adverse consequences arising from statements in applications or campaigns. Applicants and candidates must carefully refrain from overstating past experiences and responsibilities. Such actions can have significant unintended consequences. Our decision today in no way should be construed as condoning the use of overstatements in judicial applications or campaigns. <u>See</u> <u>Griffin</u>, __ S.W.3d at __, No. E2020-00327-SC-T10B-CO.