IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 23, 2022

**LEE RICHARD SLOTNIK v. SHANI MARIE SLOTNIK**

**Appeal from the Circuit Court for Williamson County**
**No. 19CV-623     James G. Martin III, Judge**

_____

**No. M2022-00645-COA-T10B-CV**
_____

In this accelerated interlocutory appeal, a mother seeks review of the denial of her motion to recuse the trial judge. She contends that statements the trial judge made at a hearing present a reasonable basis for questioning the judge's impartiality or could only stem from an extrajudicial source. We conclude that they do not. So we affirm.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON II, J., joined.

Fred C. Dance, Franklin, Tennessee, for the appellant, Shani Marie Slotnik.

Mark T. Freeman, Nashville, Tennessee, for the appellee, Lee Richard Slotnik.

**OPINION**

**I.**

**A.**

Shani Marie Slotnik ("Mother") and Lee Richard Slotnik ("Father") divorced in Illinois. After they both moved to Tennessee, Father filed a petition in Davidson County to enroll or register the divorce decree. Father also sought to modify the visitation schedule established by the Illinois court for their minor child. In 2017,[1] the Davidson County court

_____

[1] Some places in the limited record before us indicate this may have occurred in 2016.

entered an order naming Father as the primary residential parent and severely restricting Mother's parenting time.

Over time, the child's relationship with both Mother and Father improved. By the fall of 2018, they "relaxed the parenting plan to the point where they were essentially sharing parenting time." But then the relationship between Father and child began to deteriorate and continued to do so through 2020.

The case was transferred to the Williamson County Circuit Court. And in March 2021, Mother petitioned to change custody or to modify the residential parenting schedule. Father counter-petitioned to revert back to the permanent parenting plan or reduce Mother's parenting time. The trial court conducted evidentiary hearings on the petition and counter-petition over three days. At the conclusion of the proof, the court gave an oral ruling which was incorporated into a written order entered on August 24, 2021. On an interim basis, the court reduced Mother's parenting time and ordered that her parenting time "be supervised until the child's relationship with Father improves." The court also ordered Mother, Father, and the child to work with a mental health professional to restore unsupervised visitation between Mother and the child.

The order included several factual findings. The court recounted the case history from the initial filings in Davidson County:

> The evidence in this case established that, historically, [Mother] made some atrocious allegations regarding her son that resulted in severely restricted parenting time between her and [the child] when he was a little boy, three or four years old. That she worked with [a counselor] and her husband participated in that. [The counselor] testified that they came to sessions prepared, and they did a great job. And over time, the relationship between [Mother] and [the child] . . . was normalized.
>
> The evidence at that time, though, was that [Father] should be cautious because there was some warning that [Mother] might not be able to help herself. She might not be able to refrain from aiding and abetting behavior.

Then the court turned to Mother's petition and Father's counter-petition. It found "clear and definite evidence . . . that the child ha[d] materially changed in his relationship with Father." And the child, now age 10, was "bullying" both Father and his paternal grandmother. The child had also made up allegations that Father's home was dirty and that Father had been violent.

The court could not determine a cause for the changed relationship between Father and the child. It eliminated Father's conduct as a cause, or at least that conduct as alleged by the child, finding the change was "not the result of any conduct that Father has engaged

2

in." The court was more equivocal when it came to Mother and the child. Rather than eliminating their conduct, the order provided:

> The Court cannot find that the conduct of Mother has caused the change in the relationship between the child and Father.

> The Court cannot find that it is the child's own conscious intent that he is going to mistreat his Father.

> The Court simply has no understanding of why the relationship with Father has changed but it has.

Although the court could not attribute the change to Mother's conduct, the court did find that "[f]urther parenting time with Mother would impair the relationship between the child and Father." And "[t]here [wa]s probable cause to determine that the child [wa]s at risk unless the Court imposes strict limitations on the contact between Mother and the child until the relationship between the child and Father is restored."

On February 9, 2022, Mother moved to revise the interim order limiting her parenting time. She complained that the court "drastically reduced Mother's parenting time with her son without a finding that Mother had caused any harm, be that physical, mental or emotional." She interpreted the court's order as finding "that Mother did not cause the change in the relations between [the child] and Father." Following a hearing at which the court only heard arguments of counsel, the court denied the requested relief.

B.

On April 21, 2022, Mother moved for recusal of the trial judge. Mother "made no allegations that the Court ha[d] <u>actual</u> bias against her." Instead, Mother claimed that "statements the Court ha[d] made . . . give rise to the <u>appearance of bias</u> and/or the <u>appearance that the result of the final hearing</u> of this matter ha[d] been <u>predetermined</u> by the Court." Mother pointed to statements made by the judge at both the evidentiary hearing and the hearing on Mother's motion to revise.

Mother contended that the judge's statements during and after the evidentiary hearing improperly elevated Father's relationship with the child over other considerations. Among other things, the judge said, "I'm interested in the fact that this little boy has no relationship with his father" and "What I care about is the fact that [the child is] shunning his father." Thus the judge "approached the problem by attempting to repair [the child's] relationship with Father at the expense of Mother's relationship and time with [the child]."

According to Mother, the judge had "no justification for the reduction in Mother's parenting time." And, as she did in her motion to revise, Mother characterized the court's

3

previous order as finding that Mother did not cause the change in relationship between Father and the child.

Mother contrasted the court's finding with statements the judge made during the hearing on the motion to revise. In response to arguments of Mother's counsel that there was no evidence that Mother "ha[d] done something wrong here or neglected the child," the judge said,

> All right. Let's talk. The record in this case is undisputed that your client engaged in sever[e] parental alienation of this child when the case was in the hands of -- Judge [Phillip] Robinson in Davidson County without qualification. The trial court then severely limited your client's contact and time with [the child] as a result of that. So I have a history in the cause that tells me that your client is fully capable of creating the d[y]sfunction that [the child] is now exhibiting.

Later, the judge explained that Mother was "the only variable that's been added to the mix." When Mother's counsel suggested that the child aging from 8 to 10 might be another variable to consider, the judge replied, "No. I'm not buying that."

When Mother's counsel persisted with the notion that that the temporary parenting plan was inappropriate given that Mother was not the cause, an exchange took place between counsel and the judge about potential causes for the problematic relationship between Father and the child. And Mother claims that the judge's statements indicate he had prejudged the case.

> MOTHER'S COUNSEL: You have to follow the case law that's out there. And Your Honor found mom did not cause the change in relationship, which is the factor that the Court finds so important that we just talked about.
>
> THE COURT: She is the one variable that's been - -
>
> MOTHER'S COUNSEL: There's tons of variables.
>
> THE COURT: - - introduced into the mix. And the Court has no evidence that would indicate that an age change for [the child] between 8 and 10 can account toward his attitudinal change toward . . . his [paternal] grandmother and his father. There is no evidence at all to support that.
>
> MOTHER'S COUNSEL: Your Honor has no evidence that the mother caused any of this.
>
> THE COURT: She is the only source that it could be.

4

MOTHER'S COUNSEL:  But Your Honor found that it could be, but she didn't.

THE COURT: If I have to I will.  I don't like to say those things in orders if I can avoid it . . . .

MOTHER'S COUNSEL:  Yes, sir, I got that.  But we've already been through that if this was a final hearing, you would probably have a different result.

THE COURT: I don't know that.  I don't know what I will do at a final hearing.  I have to hear the evidence.

Mother also claims that the judge relied on extrajudicial sources in limiting Mother's parenting time.  The judge stated that he "underst[oo]d that children who grow up without a relationship with both of their parents tend to as adults have a great number of difficulties."  And the judge identified the difficulties as problems with relationships, anxiety, depression, and addiction.  Mother complained that the potential effects on a child lacking a relationship with both parents "had to come from an extrajudicial source because there was no testimony at the trial about the negative effects."

In a detailed order, the court found no basis for recusal.  The court acknowledged making remarks during hearings critical or disapproving toward Mother, but the record also reflected that the court made remarks critical or disapproving toward Father.  The court also emphasized that it had not determined how it would rule at the final hearing on Mother's petition and Father's counter-petition.  At the hearing on the motion to revise, the judge told counsel and the parties, "I don't want anybody to leave this courtroom with an idea that I've made up my mind . . . because I haven't."  With the interim order, the court was trying "to understand what can be done to restore the relationship [between Father and son]."  At the final hearing, it hoped for answers from the mental health professionals "in order to come to a resolution and make a final judgment . . . about what parenting time should be implemented that would serve [the child's] best interest."

The court explained that its comments concerning the long-term effects on a child lacking a relationship with both parents stemmed from Tennessee law, not an extrajudicial source.  The court noted that state statute recognizes that a parent's conduct "may have an adverse effect on the child's best interest."  Tenn. Code Ann. § 36-6-406(d) (2021).  And parenting time can be limited for "[t]he abusive use of conflict by the parent that creates the danger of damage to the child's psychological development."  *Id.* § 36-6-406(d)(5).  The specific long-term effects of parental alienation on children has been referenced in Tennessee cases involving parental alienation.  *See McClain v. McClain*, 539 S.W.3d 170, 205 (Tenn. Ct. App. 2017) (referencing expert testimony on "the potential long-term

5

harmful effects of parental alienation"); *Duke v. Duke*, No. M2013-00624-COA-R3-CV, 2014 WL 4966902, at \*21 (Tenn. Ct. App. Oct. 3, 2014) (quoting an expert's testimony about the long-term consequences to children from parental alienation).

## II.

In this accelerated appeal, Mother focuses her arguments on statements made by the judge during the March 1, 2022 hearing on her motion to revise.[2] She again takes the position that "[t]he August 24, 2021 order specifically found and determined that Mother was not the cause of [the child's] change in relationship with Father." Following that finding or determination, at the hearing on the motion to revise, the judge "stated on three (3) separate occasions that Mother was the 'only' or the 'one' variable in the case – that could have caused the change in relationship between [the child] and Father." And the judge "went so far as to state that . . . [he] **had a lot of evidence** that Mother was the cause in the change in relationship between [the child] and Father." Mother reasons that, because there were no substantive hearings between the August 24, 2021 order and the March 1, 2022 hearing, "these statements . . . that blame Mother for the change or find a causal link between Mother's conduct and the change in relationship between [the child] and Father [must] necessar[ily] c[o]me from some extrajudicial source or raise the very real appearance that an extrajudicial source was involved." Mother also contends that the court's comments on the effects of parental alienation are "clearly based on an extrajudicial source."

Finally, Mother argues that the judge singled her out for unwarranted criticism during the March 1, 2022 hearing. The judge noted that Mother had some severe criticisms of Father that relate back to a time before they were married. So the judge commented that "clearly . . . [Mother] harbors ill feelings toward [Father] that predate their divorce."

### A.

In Tennessee, litigants "have a fundamental right to a 'fair trial before an impartial tribunal.'" *Holsclaw v. Ivy Hall Nursing Home, Inc.*, 530 S.W.3d 65, 69 (Tenn. 2017) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)); *see Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998) (reasoning that litigants "are entitled to the 'cold neutrality of an impartial court'" (quoting *Leighton v. Henderson*, 414 S.W.2d 419, 421 (Tenn. 1967))); *see also* TENN. CONST. art. VI, § 11. It "goes without saying that a trial before a biased or prejudiced fact finder is a denial of due process." *Wilson v. Wilson*, 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998).

---

[2] In an accelerated appeal, we may request an answer from the other party and briefing. TENN. SUP. CT. R. 10B § 2.05. We may also set oral argument. *Id.* § 2.06. After a review of Mother's petition for recusal appeal and supporting documents, we find an answer, additional briefing, and oral argument are unnecessary.

Our courts also recognize that "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001); *see In re Cameron*, 151 S.W. 64, 76 (Tenn. 1912) ("[I]t is of immense importance, not only that justice shall be administered . . . , but that [the public] shall have no sound reason for supposing that it is not administered."). So a judge should recuse when they have "any doubt as to [their] ability to preside impartially in [a] case." *Davis*, 38 S.W.3d at 564. But a judge must also "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." TENN. SUP. CT. R. 10, Rule 2.11(A). This test is "an objective one." *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008). It requires recusal "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis*, 38 S.W.3d at 564-65 (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). On appeal, the denial of a motion to recuse is reviewed de novo. TENN. SUP. CT. R. 10B § 2.01.

B.

We conclude that a person of ordinary prudence in the trial judge's position, knowing all of the facts known to the judge, would not find a reasonable basis for questioning his impartiality based on his comments at the hearing on the motion to revise. Both the motion to revise and the motion for recusal began with a faulty premise. After the evidentiary hearing for the temporary parenting plan, the court did not find or determine that Mother was not the cause of the child's change in relationship with Father. As we understand the order, the court found only that the relationship between Father and the child had changed. Despite Mother's past history of "atrocious allegations regarding her son that resulted in severely restricted parenting time between her and [the child]," the court could not find that the conduct of Mother had caused the changed relationship. But, in the context of the other provisions of the order, the court was not eliminating Mother's conduct as the cause. The court was determining that the proof fell short of establishing a causal connection.

If the proof fell short of establishing a connection, could there be "a lot of evidence" that Mother caused the changed relationship?[3] Yes. Even without a complete transcript from the evidentiary hearing, we can deduce what some of that evidence might be. Mother had a prior history of "atrocious allegations regarding her son that resulted in severely restricted parenting time between her and [the child]." *See State v. Lawson*, 291 S.W.3d 864, 869-70 (Tenn. 2009) (recognizing that judicial notice may be taken of prior

_____

[3] The judge did not "state that . . . [he] **had a lot of evidence** that Mother was the cause in the change in relationship between [the child] and Father." The actual quote from the transcript of the hearing is as follows: "So [Mother's counsel], the Court takes issue with your client's position that I don't have evidence. I've got a lot of evidence." Mother's counsel responded, "I understand that, Judge."

7

proceedings). And Father's relationship with the child went from good to poor as Mother's parenting time increased.[4] According to the child, the relationship with his father and paternal grandmother deteriorated due to the filthy conditions of Father's home and Father's violence toward him. The court found "[t]he child's allegations regarding the condition of Father's home [we]re false" and that "Father's home and the child himself [were] well-maintained." And "Father ha[d] not been violent with the child, ha[d] not thrown things, and ha[d] not pushed or shoved the child." In other words, the child was making atrocious allegations, not unlike his mother had previously. And the child was only 10 years old.

Mother was not the only variable that could have caused the change in relationship between the child and Father. But the evidence apparently showed she was a more likely cause for change than that suggested by Mother's counsel. The judge said Mother was the "only source" for the changed relationship while Mother's counsel was engaged in some hyperbole of his own. During argument on the motion to revise, the judge interjected that Mother was "one variable that's been . . . introduced into the mix." Mother's counsel responded that "[t]here's tons of variables" and suggested that one of those variables might be the child's age. The judge retorted that there was "no evidence that would indicate that an age change for [the child] between 8 and 10 can account toward his attitudinal change toward . . . his grandmother and his father." Mother's counsel, attempting to apply the same logic, argued, "Your Honor has no evidence that the mother caused any of this." The judge replied, "She is the only source that it could be."

The judge may have overstated to make his point. We conclude, in context, the statement would not cause a reasonable person to question the judge's impartiality. *See Alley*, 882 S.W.2d at 822 (holding that "[a]ny comments made by the trial court must be construed in the context of all the facts and circumstances to determine whether a reasonable person would construe those remarks as indicating partiality on the merits of the case"). The judge advised both parties, who were present at the hearing on the motion to revise, that no final decision had been made and that he needed to hear testimony from the mental health professionals involved in the case.

Remarks, unsupported by the record, that "suggest that the judge has taken a position favorable or unfavorable to a party . . . indicate bias." *Id.* Mother argues that some of the judge's remarks about her must have come from extrajudicial sources. We discern no remarks regarding Mother so unsupported by the record as to manifest bias or prejudice against Mother. The judge did make critical comments about Mother, including that she "harbors ill feelings toward [Father] that predates their divorce." Yet, the judge prefaced that observation by referencing Mother's "severe criticism" of Father. Judges are

---

[4] A *post hoc ergo propter hoc* argument is not always fallacious. Stephen M. Rice, *Argument's Design: The Post Hoc Ergo Propter Hoc Fallacy in Legal Argument & Analysis*, 89 UMKC L. Rev. 279, 295 (2020).

expected to gain knowledge and form opinions based on the legal proceedings over which they preside. *Liteky v. United States*, 510 U.S. 540, 550-51 (1994). It is only when those opinions become "so extreme as to display clear inability to render fair judgment" that they become disqualifying. *Id.* The opinions the judge shared here do not rise to that level.

Finally, we consider the judge's comments about the effects on a child that does not have a relationship with both parents. We agree with Mother that it would be improper for the court to rely on expert testimony offered in other cases to support a finding in this case. Yet, we do not consider the judge's comments disqualifying. The comments do not "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 555. And the belief that a child of divorce should have a relationship with both parents is ingrained in our custody statute. Subject only to consideration of the child's best interest, courts must "order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child." Tenn. Code Ann. § 36-6-106(a) (2021). And, in fashioning custody arrangements, courts consider "the willingness and ability of each of the parents . . . to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child." *Id.* § 36-6-106(a)(2).

## III.

We affirm the denial of Mother's motion to recuse. We remand the case for such further proceedings as may be necessary.

s/ W. Neal McBrayer
W. NEAL McBRAYER, JUDGE

9