IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 8, 2024

## CARTER O'NEAL LOGISTICS ET AL v. EVANS PETREE, PC ET AL.

**Appeal from the Circuit Court for Shelby County**
No. CT-3989-22     Valerie L Smith, Judge
_____

**No. W2024-00048-COA-T10B-CV**
_____

This is an accelerated interlocutory appeal as of right under Tennessee Supreme Court Rule 10B from a circuit court judge's denial of a motion to recuse. The plaintiffs moved for recusal based primarily on an alleged attorney-client relationship between the judge and counsel for the defendants. We affirm the trial court's denial of the motion to recuse.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Circuit Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and KENNY W. ARMSTRONG, JJ., joined.

Bruce S. Kramer and Bruce M. Smith, Memphis, Tennessee; and Worrick G. Robinson, IV, and Seamus T. Kelly, Nashville, Tennessee, for the appellants, Carter O'Neal Logistics, Inc., P&M Logistics, Inc., and Boris Penchion.

Richard Glassman, Lauran G. Stimac, and Brian Garrott, Memphis, Tennessee, for the appellees, Evans Petree, PC, and Daniel T. Robinson, Jr.

**OPINION**

I.

This appeal arises out of a denial of a motion to recuse in a case in which the underlying litigation relates to alleged legal malpractice. In September 2022, Plaintiffs Carter O'Neal Logistics, Inc., P&M Logistics, Inc., and Mr. Boris Penchion filed the underlying suit against Defendants, the law firm Evans Petree, P.C., and one of its partners, Mr. Daniel Robinson. While representing Mr. Penchion, Mr. Robinson also became business partners with Mr. Penchion in a number of enterprises including Paddlefish Partners, LLC, a caviar company.

In October 2022, the Plaintiffs filed a special notice pursuant to Shelby County Local Rule 21, noting that a Shelby County attorney is a party to the suit. Under a provision of Shelby County Local Rule 21, the notice sought the appointment of an extra-county judge. In December 2022, Judge Smith, the trial court judge, ruled that designation of an extra-county judge was unnecessary in this case, and the case proceeded.

In late August 2023, Mr. Robinson set a special meeting for Paddlefish Partners, LLC, to take place on September 6th to discuss, among other topics, legal fees for the underlying lawsuit and potentially buying out Mr. Penchion's interest. Concerned about this meeting, the Plaintiffs filed an emergency petition for a temporary restraining order on September 5th to stop the meeting from occurring. That same day, the Plaintiffs' attorney Mr. Bruce Smith and the Defendants' attorney Ms. Lauran Stimac went to the Shelby County courthouse to argue their divergent positions as to the temporary restraining order. They, however, did not speak to Judge Smith, and the petition was not heard. Neither Mr. Smith nor Ms. Stimac actually went to Judge Smith's chambers or spoke to her chambers staff. Evidently, the attorneys interacted with other judges or their staff in seeking a judge to hear their dispute as to the temporary restraining order, but they did not successfully obtain a hearing. In the absence of the temporary restraining order, the meeting went ahead.

The next day, Plaintiffs' attorney Mr. Bruce Kramer wrote a letter to the court informing Judge Smith that attorneys for the parties had come to the courthouse to address a temporary restraining order but that the motion was "unable to be heard." He explained that because the Paddlefish Partners, LLC, meeting had occurred, the issue was now moot, and the parties would attempt to find a time to set a hearing for the Plaintiffs' motion for a temporary injunction.

Two day later, at a previously set hearing on a motion from the Defendants to compel discover responses, Judge Smith addressed Mr. Bruce Kramer's letter. Judge Smith objected to the insinuation that she was unavailable to hear argument on the motion for a temporary restraining order. The trial court judge indicated that she had been in her chambers and was available. Judge Smith questioned whether anyone had come to her chambers, spoken with her chambers staff, or asked to speak with her. The attorneys for the Plaintiffs and Defendants conceded that they had not communicated with Judge Smith or her chambers staff. The reason for failing to do so was attributed to a communication with the clerk's office. The trial judge was critical of the handling of this matter by the attorneys in at least three respects: (1) Mr. Bruce Kramer's letter's mistaken insinuation that she was unavailable, (2) the failure of the attorneys to better investigate whether she was available, and (3) the appearance of judge shopping evidenced by the attorneys wandering the courthouse seeking a judge to hear the emergency temporary restraining order petition.

The hearing moved on to addressing the Defendants' motion to compel. Judge Smith ruled orally that the Plaintiffs would have thirty days to provide the discovery

responses. After the hearing, the parties submitted competing proposed orders. The court entered a written order on October 16, 2023, memorializing its oral ruling. In that order, the plaintiffs were given a deadline of October 9th to provide discovery responses, which was in line with the thirty-day deadline announced orally at the hearing, but which had already passed at the time the written order was entered.

The Plaintiffs failed to meet the October 9th deadline, and the Defendants filed a motion for sanctions. That motion was set for a hearing on October 27, 2023, along with a number of other motions relating to the case. Mr. Bruce Kramer's son, Mr. Scott Kramer, who is also an attorney, attended this hearing, but he did not participate. When the trial court judge entered the courtroom, Mr. Scott Kramer was seated in the jury box rather than the gallery. Judge Smith questioned why he was present in the courtroom. Addressing concerns later raised by the Plaintiffs about this question, the trial court judge indicated her reason for asking had been to determine whether Mr. Scott Kramer needed the court's attention as to some matter or whether he was simply present as an observer with his father. Judge Smith indicated that her general practice is "to shepherd lawyers in and out as quickly as possible before starting what might be a lengthy hearing." Mr. Bruce Kramer, however, believed the question reflected that Judge Smith held "more than a lingering resentment" against Mr. Scott Kramer related to a case the judge had presided over two years earlier and, by extension, bias against him.

The Plaintiffs filed a motion to recuse on November 29, 2023. The foundations of this recusal motion trace back to litigation occurring two years earlier involving different parties.

*The Prior Litigation*

Two years earlier, in 2021, Mr. Scott Kramer was litigating a divorce case before Judge Smith. The relationship between Mr. Scott Kramer and opposing counsel in that case was particularly acrimonious. Judge Smith recalled the two lawyers lobbing personal insults at each other and generally refusing to maintain civility, despite the trial court's repeated attempts to encourage civility. The uncivil conduct impacted the progress of the case with the emergence of excessive and time- and resource-consuming discovery disputes. During this time period, Referee Cary Woods encountered the two opposing attorneys

> speaking to each other in the [courthouse] hallway in a most unprofessional manner completely lacking in civility. He . . . counseled the lawyers that their language, tone, and decibel level were unacceptable behavior in the courthouse. He indicated that the attorneys were so animated and angry that he felt the need to advise the Court for both its safety and the sake of decorum. Referee Woods relayed nothing of the substance, only the alarming interaction he witnessed [to Judge Smith].

Having had no success in calming the overheated and uncivil interactions of the attorneys in the case before her, the trial court judge reached out to Mr. Richard Glassman, whom she described as "a seasoned member of the bar" and who the judge believed knew the attorneys involved as well as knowing Mr. Scott Kramer's father Mr. Bruce Kramer. Mr. Glassman indicated that during his conversation with the judge, "Judge Smith stated that personality conflicts had developed between the attorneys for the parties in the Divorce Case that were impeding the progress of the case." He stated that Judge Smith asked him "to attempt to mediate the dispute between the attorneys for the parties such that the Divorce Case could move forward."

That is not, however, what Mr. Bruce Kramer or Mr. Scott Kramer believe Judge Smith asked Mr. Glassman to do. Around this same time period, Mr. Scott Kramer filed a motion to recuse Judge Smith and a complaint with the Board of Judicial Conduct. The Kramers assert that Mr. Glassman contacted Mr. Scott Kramer on behalf of Judge Smith for the purpose of asking him to withdraw the motion to recuse. During the course of his conversation with Mr. Glassman, Mr. Scott Kramer indicated that he also informed Mr. Glassman of a complaint that he had also filed with the Board of Judicial Conduct. Learning of the complaint, in addition to asking Mr. Scott Kramer to drop the motion to recuse, Mr. Glassman also asked him to withdraw the complaint to the Board of Judicial Conduct. The Plaintiffs note that Judge Smith would not have been aware of the complaint to the Board of Judicial Conduct when Mr. Glassman contacted Mr. Scott Kramer. The Kramers both believe that Mr. Glassman was acting in a legal representative capacity, as Judge Smith's attorney, when contacting Mr. Scott Kramer on behalf of Judge Smith to ask that Mr. Scott Kramer withdraw the motion to recuse and upon learning of the complaint to the Board of Judicial Conduct, similarly asking him to withdraw it.

In opposition to this contention, Mr. Glassman indicated that it was Scott Kramer who "informed [him] that he had filed a Motion to Recuse in the Divorce Case and judicial complaint with the Tennessee Board of Judicial Conduct against Judge Smith." Mr. Glassman indicated that the two men spoke about the difficulties that Mr. Scott Kramer had been having with opposing counsel in the case and that Mr. Scott Kramer acknowledged having lost his temper. As part of the conversation, Mr. Glassman stated that Mr. Scott Kramer indicated he wished to withdraw the motion to recuse and judicial complaint of which Mr. Scott Kramer had made him aware. Text messages were presented to the court that involved communication in November 2021 with Mr. Glassman following up with Mr. Scott Kramer regarding whether the "recusal and all" had been withdrawn.

In the order denying the motion to recuse, Judge Smith indicated that there was no attorney-client relationship between her and Mr. Glassman. She stated that she "did not engage or contract Mr. Richard Glassman for legal services." Additionally, the trial court judge avowed that she "received no legal advice from Mr. Richard Glassman" and "did not authorize anyone to speak on" her behalf. Mr. Glassman, similarly, declared that he "did not represent" Judge Smith and "did not act as legal counsel" for Judge Smith.

- 4 -

Furthermore, Mr. Glassman avowed that Judge Smith "did not ask or authorize" him "to act on her behalf." Both the trial court judge and Mr. Glassman explained Mr. Glassman's charge from Judge Smith being one of addressing incivility with attorneys in the divorce case and helping to mediate their conflict.

*The Motion to Recuse and Order Denying*

The Plaintiffs filed a motion to recuse on November 29, 2023. Therein, the Plaintiffs argued that Judge Smith failed to disclose her attorney-client relationship with Mr. Glassman. Having failed to disclose, the Plaintiffs note that they did not waive an objection thereto and argue that recusal is now required. The recusal motion also asserted the trial judge exhibited bias. Regarding the claim of bias, Mr. Bruce Kramer noted the trial judge's comments regarding his letter at the September 8, 2023 hearing constituted a "tirade" and that her question to Mr. Scott Kramer regarding his presence in the courtroom reflected her continuing hostility toward Mr. Bruce Kramer's son and, by extension, Mr. Bruce Kramer.

On November 30th, the court entered an order stating that it received the motion to recuse and would be considering it on briefs. The trial court allowed any party wishing to file a response to do so within seven days. The Defendants then filed a response, which included an affidavit from Mr. Glassman. On December 15th, the court entered a written order denying the motion.

In its order, the trial court denied the motion for three primary reasons. First, the trial court, citing to section 1.01 of Supreme Court Rule 10B, found that the motion to recuse was not filed timely. The court noted that, based on the motion and supporting affidavits, Mr. Bruce Kramer was aware of the contact between Mr. Glassman and Mr. Scott Kramer two years earlier. Additionally, the trial court concluded that "[t]here is no credible proof submitted as to why Mr. Bruce Kramer did not know of the alleged conflict of the Court prior to September 8, 2023." Furthermore, the trial court observed that Mr. Bruce Kramer stated in his affidavit that the need to file the motion to recuse did not arise until he read the transcript from the September 8, 2023 hearing, but still did not file the motion well over two months later, on November 30, 2023. Additionally, Mr. Bruce Kramer attended a hearing on October 27, 2023, at which no mention was made of any need to recuse. For the aforementioned reasons, the court found that the motion to recuse was not timely filed.

Second, the court indicated that she did not have an attorney-client relationship with Mr. Glassman. The judge reiterated that she never hired Mr. Glassman or sought legal advice from him. She explained that she maintains positive relationships with many members of the bar, including Plaintiffs' counsel, Mr. Bruce Smith, and Defendants' counsel, Mr. Glassman. She explained that she sought out Mr. Glassman in connection with mediating the disputes of the opposing attorneys in an unrelated case which had

become personal and had devolved into incivility that was hampering the advancement of that case.

The trial court judge also addressed the Plaintiffs' argument that the judge was biased against the Plaintiffs' attorney Mr. Bruce Kramer. The trial court rejected this contention. Regarding her discussion of Bruce Kramer's letter at the September 2023 hearing, the trial court judge noted that her comments reflected her concerns but that her comments did not constitute a "tirade." As for her question about Mr. Scott Kramer's presence at the October 2023 hearing, she explained her question regarding Mr. Scott Kramer's presence as an attempt to determine whether he had a separate matter that needed to be addressed before starting an extended hearing or whether he was simply present to observe his father.

In response to the trial court's denial of their motion to recuse, the Plaintiffs filed this accelerated interlocutory appeal under Supreme Court Rule 10B. The Plaintiffs assert the following issues:

1. Whether Judge Smith erred by failing to disclose her relationship with the Defendants' counsel Richard Glassman as required by Tenn. Rule of Judicial Conduct 2.11(C);

2. Whether a disinterested judge should hear the motion to recuse when the challenged judge acts as a witness providing testimony and simultaneously acts as a fact-finder;

3. Whether the nature of Judge Smith's close friendship with Attorney Glassman, as described and disclosed by Judge Smith for the first time in the Court's Order Denying the Motion to Recuse, in itself, should have caused Judge Smith to recuse herself from matters in which Glassman is an attorney of record, or in the alternative to disclose her close friendship with Glassman at the outset of her assignment to this matter;

4. Whether an attorney-client relationship was established between Judge Smith and Glassman, and for how long must Judge Smith recuse herself from matters assigned to her court in which Glassman is counsel of record or otherwise involved after the conclusion of the termination of the relationship.

II.

Section 2.01 of Tennessee Supreme Court Rule 10B entitles a party to "an accelerated interlocutory appeal as of right" of an order denying a motion to recuse. We review a trial court's denial de novo. Tenn. Sup. Ct. R. 10B § 2.01; *Duke v. Duke*, 398 S.W.3d 665, 668 n.2 (Tenn. Ct. App. 2012).

"Litigants in Tennessee have a fundamental right to a fair trial before an impartial tribunal." *State v. Griffin*, 610 S.W.3d 752, 757 (Tenn. 2020) (quoting *Holsclaw v. Ivy Hall Nursing Home, Inc.*, 530 S.W.3d 65, 69 (Tenn. 2017)). The public's confidence in the neutrality and impartiality of the judiciary is a significant interest, *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009), and "[i]f the public is to maintain confidence in our system of justice, a litigant must be afforded . . . the 'cold neutrality of an impartial court.'" *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008) (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001)).

"[T]he test for recusal requires a judge to disqualify himself or herself in any proceeding in which 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Griffin*, 610 S.W.3d at 758 (quoting *Cannon*, 254 S.W.3d at 307). This test is objective rather than subjective because the appearance of bias harms the integrity of the court system as much as actual bias. *Cannon*, 254 S.W.3d at 307. "To act 'impartially' is to act in 'absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge.'" *Adams v. Dunavant*, 674 S.W.3d 871, 878 (Tenn. 2023) (quoting Tenn. Sup. Ct. R. 10, Terminology "Impartiality."). When a judge's impartiality might reasonably be questioned, recusal is warranted "[e]ven if a judge believes he [or she] can be fair and impartial." *Bean*, 280 S.W.3d at 805. The party moving for recusal bears the burden of presenting evidence that would prompt a reasonable, disinterested person to believe that there is a reasonable basis for questioning the judge's impartiality. *Duke*, 398 S.W.3d at 671.

Under Tennessee Supreme Court Rule 10, Canon 2, Rule 2.11(A)(1),

(A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

(1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

. . . .

(C) A judge subject to disqualification under this Rule, other than for bias or prejudice under paragraph (A)(1) or for participation in a judicial settlement conference under paragraph (A)(6)(e), may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, outside the presence of the judge and court personnel, whether to

- 7 -

waive disqualification. If, following the disclosure, the parties and lawyers agree, without participation by the judge or court personnel, that the judge should not be disqualified, the judge may participate in the proceeding. The agreement shall be incorporated into the record of the proceeding. . . .

Tenn. Sup. Ct. R. 10, RJC 2.11.

III.

We begin our consideration of the issues raised by the Plaintiffs on appeal by clearing some of the underbrush, issues advanced by the Plaintiffs on appeal that were not raised before the trial court and which, accordingly, are not properly before this court. For the first cut, the Plaintiffs argue on appeal (Issue 2) that the trial court judge should not have ruled upon their motion to recuse. They assert the trial court judge was not disinterested in their motion; accordingly, the Plaintiffs contend the trial court judge should have stepped aside, allowing consideration of their recusal motion by another judge. They cite federal law as providing a model approach under which a federal district court judge steps aside to allow another federal district court judge to consider the motion to recuse. Plaintiffs, however, have not pointed this court to where they sought such a procedure in the trial court. From our review of the record, we see no reference to the Plaintiffs seeking such procedure. To the contrary, the Plaintiffs asked for a prompt ruling on their motion by Judge Smith. Because the first time this issue has been advanced is on appeal, we decline to consider the Plaintiffs' contention that the procedure they have outlined on appeal should have been employed. *See Powell v. Cmty. Health Sys.*, Inc., 312 S.W.3d 496, 511 (Tenn. 2010) ("It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court.").

Additionally, the Plaintiffs assert on appeal that the trial court judge should have recused based upon a close friendship with Mr. Glassman (Issue 3). In reviewing the Plaintiffs' motion for recusal, we do not see an assertion that the trial court judge should recuse based upon a close friendship with Mr. Glassman. Nor does the trial court's order denying recusal indicate that the trial court judge has a "close friendship" with Mr. Glassman. The trial court judge instead referred to Mr. Glassman as a "friend of the Court" in the context of explaining that he is a "seasoned member of the bar" who the court believed knew the attorneys involved and who could mediate for the warring attorneys. The court's order does not establish the "close friendship" that the Plaintiffs argue exists between the trial court judge and Mr. Glassman and that they now argue warrants recusal. Significantly, the trial court was not presented with a recusal motion seeking recusal on that basis. This court functions as a court of review, and this issue is not raised before the trial court and is thus not properly before us. *See Powell*, 312 S.W.3d at 511 ("It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court.").

- 8 -

IV.

There is an argument advanced in the Plaintiffs' petition addressing Issues 1 and 4 on appeal that was both presented to the trial court and that has been adequately developed before this court. The foundation for this argument is the Plaintiffs' contention that the trial court judge asked Mr. Glassman to have Mr. Scott Kramer withdraw his motion to recuse on her behalf and, upon Mr. Glassman learning of the complaint to the Board of Judicial Conduct, Mr. Glassman similarly asked on behalf of Judge Smith for Mr. Scott Kramer to withdraw the complaint. The Plaintiffs contend that this created an attorney-client relationship between the trial court judge and Defendants' counsel Mr. Glassman. The Plaintiffs argue that this attorney-client relationship had to be disclosed, that because it was not disclosed the Plaintiffs did not waive an objection thereto, and, accordingly, the trial court judge erred by not recusing herself.

The Plaintiffs offer authority to support their contention that a judge who has an attorney-client relationship with counsel in a case should disclose that relationship. They also draw upon authority from another jurisdiction to offer bright-line reasonable time limits on such disclosure requirements, suggesting a disclosure requirement extending until two years after the representation has ceased.

The Plaintiffs' argument constructs an elaborate edifice, but there is a structural problem stemming from weakness at the foundational level. The foundational level problem relates to a question of fact rather than law, and if that foundation crumbles, the elaborate edifice that has been built by the Plaintiffs also falls.

Reflecting upon that factual foundation, Mr. Scott Kramer recalls Mr. Glassman communicating with him on behalf of Judge Smith for the purpose of asking him to withdraw his motion to recuse. He adds that, upon learning of Mr. Scott Kramer's complaint before the Board of Judicial Conduct, Mr. Glassman also sought withdrawal of that complaint on behalf of the trial court judge. The Plaintiffs point to text messages from Mr. Glassman in November 2021 following up regarding these matters. The underlying factual assertion is that the trial court judge asked Mr. Glassman on her behalf to have Mr. Scott Kramer withdraw his recusal motion. Additionally, upon learning of it, Mr. Glassman on the trial judge's behalf also sought to have Mr. Scott Kramer withdraw his complaint to the Board of Judicial Conduct. This is the foundational level of the Plaintiffs' argument for recusal upon which the edifice is constructed.

The problem is that the trial court judge and Mr. Glassman have indicated that was not the charge the trial court judge gave to Mr. Glassman. With both the trial court judge and a referee having been unsuccessful in getting the warring attorneys in the 2021 divorce case to act civilly, the trial court judge instead indicated that she asked a senior member of the local bar who knew the warring attorneys to mediate their dispute in the hopes of advancing the case with greater civility. The trial court judge also noted that the recusal

motion in the divorce case simply would have been denied. The Plaintiffs do not contend that the trial court judge was aware of Mr. Scott Kramer's complaint to the Board of Judicial Conduct when the judge asked Mr. Glassman to speak with Mr. Scott Kramer; to the contrary, the Plaintiffs state that she was not. Additionally, Mr. Glassman declares that the charge that he was given by the trial court judge was to help mediate the uncivil dispute between these warring attorneys. Both Mr. Glassman and the trial court judge are clear and unequivocal that there was no attorney-client relationship between the two and that Mr. Glassman was not authorized to speak for the judge in any type of representative capacity. In his October 2021 conversation with Mr. Scott Kramer, Mr. Glassman noted that Mr. Kramer delineated the problems that he had been having with opposing counsel and conceded to having lost his temper in connection with the divorce case. Mr. Glassman offered a plan for how to effectively move forward. During this discussion, Mr. Kramer informed Mr. Glassman that he had also filed a motion for recusal and a board complaint. In light of their discussion as to how to best move forward with opposing counsel in the case, Mr. Glassman indicated that it was Mr. Scott Kramer who expressed a desire to withdraw both, which he evidently did.

As noted above, the party moving for recusal bears the burden of presenting evidence that would prompt a reasonable, disinterested person to believe that there is a reasonable basis for questioning the judge's impartiality. *Duke*, 398 S.W.3d at 671. Furthermore, "recusal is required if a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Adams*, 674 S.W.3d at 878 (citations omitted).

Simply stated, the trial court judge and Mr. Glassman have superior knowledge to Mr. Scott Kramer as to what precisely Mr. Glassman was asked by the trial court judge to do. Whereas the Plaintiffs advance a conception of the relationship as an attorney-client relationship in which Mr. Glassman was asked to get a motion to recuse withdrawn, that is simply not the mission that the trial court judge indicated she gave to Mr. Glassman nor the mission that Mr. Glassman said was given to him by the trial court judge. From our review of the record, we are unpersuaded that the Plaintiffs have satisfied their burden.

V.

Even if we assumed for purposes of argument that an attorney-client relationship was formed, affirmance of the trial court's denial of the motion to recuse would still be warranted. In addition to addressing the Plaintiffs' motion for recusal on the merits, the trial court judge also ruled that the motion was untimely brought and was brought for strategic purposes. It is not clear that the Plaintiffs have challenged on appeal this basis for the trial court's ruling, and even if the ruling has been challenged, the Plaintiffs' argument is not sufficiently developed and has been waived. Accordingly, the trial court's denial of the motion to recuse is also due to be affirmed on this procedural basis.

In concluding that the motion to recuse should be denied for untimeliness, the trial court expressly referenced Tennessee Supreme Court Rule 10B section 1.01.  That section requires that "[a]ny party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge . . . shall do so by a written motion filed promptly after a party learns or reasonably should have learned of the facts establishing the basis for recusal."  The trial court concluded that prompt filing did not occur in this case.  Based upon the affidavits before it, the trial court concluded that Mr. Bruce Kramer was aware of the facts giving rise to the Plaintiffs' motion to recuse in relation to the alleged attorney-client relationship in October 2021.  In other words, Mr. Bruce Kramer would have been aware of these circumstances at the time the trial court judge declined to have an extra-county judge assigned to the case in December 2022 nearly a year before the November 2023 motion to recuse.  The trial court further noted that even under the most favorable reading of the circumstances, the Plaintiffs still waited more than two months after Mr. Bruce Kramer's recollection of the communication between Mr. Glassman and Mr. Scott Kramer before seeking recusal.

Reflecting upon these circumstances, the trial court cited to this court's decision in *Kinard v. Kinard* wherein we observed the following:

> A party may lose the right to challenge a judge's impartiality by engaging in strategic conduct. Courts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable.

986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted).  Ultimately, the court concluded that the delay was for strategic reasons and motion to recuse was not timely filed.

From our review of the Plaintiffs' petition on appeal, it is not clear that the Plaintiffs have challenged the trial court's ruling as to timeliness.

> This court has previously confronted circumstances in which a trial court's ruling is supported by alternative independent bases but not all of those bases have been challenged on appeal. In such circumstances, we have explained that
>
> > [g]enerally, where a trial court provides more than one basis for its ruling, the appellant must appeal all the alternative grounds for the ruling. *See* 5 Am. Jur. 2d Appellate Review § 718 ("[W]here a separate and independent ground from the one appealed supports the judgment made below, and is not challenged on appeal, the appellate

court must affirm."); *see also Tower Oaks Blvd., LLC v. Procida*, 219 Md. App. 376, 392, 100 A.3d 1255, 1265 (Md. 2014) ("The law of appellate review establishes that, '[w]hen a separate and independent ground that supports a judgment is not challenged on appeal, the appellate court must affirm.'") (citation omitted); *Prater v. State Farm Lloyds*, 217 S.W.3d 739, 740–41 (Tex. App. 2007) ("When a separate and independent ground that supports a ruling is not challenged on appeal, we must affirm the lower court's ruling."); *Johnson v. Commonwealth of Virginia*, 45 Va. App. 113, 116, 609 S.E.2d 58, 60 (Va. 2005) ("[W]e join the majority of jurisdictions holding that in 'situations in which there is one or more alternative holdings on an issue,' the appellant's 'failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue.'") (citation omitted).

*Ramos v. Caldwell*, No. M-2022-00222-COA-R3-CV, 2023 WL 1776243, at *3-4 (Tenn. Ct. App. Feb. 6, 2023) (citations omitted).

Even if we could fairly say that the Plaintiffs challenged the trial court's ruling as to the timeliness of their petition, their manner of doing so is insufficient to actually place this issue before the court. Returning to the four issues stated by the Plaintiffs as being before this court on appeal, none is responsive to the trial court's finding that the motion to recuse should be denied due to untimeliness. Not only is there no issue set forth in the statement of the issues on appeal, there is no argument addressing timeliness supported by authority that is developed in the Plaintiffs' petition on appeal. There are certainly ingredients of a response to the trial court's conclusion in the introduction and fact portions of the Plaintiffs' petition. The Plaintiffs do not, however, relate these facts to the law regarding the issue of timeliness of their filing. We cannot construct the Plaintiffs' argument for them. *See Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").

Accordingly, even if we were to assume for purposes of argument that an attorney-client relationship previously existed between the trial court judge and counsel for the Defendants, the trial court's decision would still warrant affirmance based upon the untimely filing of the Plaintiffs' motion to recuse.

## CONCLUSION

After considering the arguments on appeal and for the reasons discussed above, we affirm the judgment of the trial court in denying the motion to recuse. The costs of the

- 12 -

appeal are taxed to the appellants, Carter O'Neal Logistics, Inc., P&M Logistics, Inc., and Boris Penchion, for which execution may issue if necessary. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.

_____
JEFFREY USMAN, JUDGE